MARGARET E. CREGAN, as Administratrix, etc., Respondent, v. WILLIAM H. MARSTON et al., Appellants.

The general rule that a master owes to his servant the duty to keep a machine or appliance used by the latter in order, and that he cannot delegate the duty so as to escape responsibility, does not apply to defects arising in its daily use, which are not of a permanent character and do not require the help of skilled mechanics to repair, but which may easily be and are usually remedied by the workmen, and to repair which proper and suitable materials are supplied.

*Daley* v. *B. & A. R. R. Co.* (147 Mass. 101), distinguished.

C., plaintiff's intestate, an employe of defendants was killed by the breaking of a rope called a "fall," attached to a derrick, used in hoisting buckets of coal from the hold of a vessel. In an action to recover damages for alleged negligence causing the death, it appeared that defendants kept on hand an adequte supply of these falls of the best and most approved kind; that the fall in use was in full view of the employes and would disclose any approaching weakness on the surface before becoming rotten within, and they were able to know how long it had been used and whether prudence required it to be changed. The new falls were kept under cover, locked up, but were supplied when called for. Applications for the falls were usually made by the engineer or his assistant; but any of the employes were at liberty to call for a new fall and it did not appear any such call had ever been refused. The engineer examined the fall a day or two before the accident and deemed it safe. The court charged that it was the duty of the master to watch the rope used by his servants and its changes of condition; that the engineer was his agent and deputy for such purpose, and any negligence on his part was that of the master. *Held*, error.

*Gotlieb* v. *N. Y., L. E. & W. R. R. Co.* (100 N. Y. 462); *Benzing* v. *Steinway* (101 id. 547), *Baker* v. *Allegheny V. R. R. Co.* (95 Penn. St. 211); *Cone* v. *D., L. & W. R. R. Co.* (81 N. Y. 208); *Murray* v. *Usher* (117 id. 543); *Fuller* v. *Jewett* (80 id. 50); *Corcoran* v. *Holbrook* (59 N. Y. 518), distinguished.

(Argued May 1, 1891; decided June 2, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made July 18, 1890, which affirmed a judgment in favor of plaintiff entered upon a verdict and affirmed an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*E. Louis Lowe* for appellants. The defendants, as masters, discharged their whole duty to the deceased. Their obligation was to furnish suitable materials, safe machinery and competent fellow-workmen. This obligation they performed. They are, therefore, not responsible for negligence, which was the act of a co-servant of the deceased. This is the established rule. (*Crispin* v. *Babbitt*, 81 N. Y. 516 ; *Roach* v. *R. A. I. Works*, 14 N. Y. S. R. 583 ; *Neubauer* v. *N. Y., L. E. & W. R. R. Co.*, 101 N. Y. 607 ; *Loughlin* v. *State*, 105 id. 159 ; *Webber* v. *Piper*, 109 id. 496.)

*Charles J. Patterson* for respondent. The duty of renewing the parts of the hoisting apparatus so as to keep it in proper repair for the protection of the employes rested on the defendants and they are liable for injuries resulting from a failure to perform it. They could not delegate this duty to the engineer so as to relieve themselves from liability for its negligent performance. What the engineer did or omitted in respect to this duty stands upon the same footing as if the defendants acted the same way in person. (*Fuller* v. *Jewett*, 80 N. Y. 46 ; *Cone* v. *D., L. & W. R. R. Co.*, 81 id. 208 ; *Corcoran* v. *Holbrook*, 59 id. 519 ; *Benzing* v. *Steinway*, 101 id. 547 ; *Murray* v. *Usher*, 117 id. 543 ; *Daley* v. *B. & A. R. R. Co.*, 147 Mass. 101 ; *Gottlieb* v. *N. Y., L. E. & W. R. R. Co.*, 100 N. Y. 462 ; *Bushby* v. *N. Y., L. E. & W. R. R. Co.*, 107 id. 374 ; *Durkin* v. *Sharp*, 88 id. 225 ; *Baker* v. *A. V. R. R. Co.*, 95 Penn. St. 271 ; *I. C. Co.* v. *Parker*, 100 Ind. 181.)

FINCH, J. The plaintiff's intestate was killed while loading coal into buckets which were raised from the hold of a vessel by the aid of a derrick. The rope used for that purpose, and which lifted the loads to the control of the gaff, suddenly parted and the falling mass crushed the deceased who died

almost immediately from his injuries. There is no question of contributory negligence in the case, and not the least doubt that the defendants did their full duty so far as it consisted in the selection and supply of the rope used.

The controversy is thus narrowed by the facts to the single inquiry whose duty it was to observe and examine the condition of the rope, and change it when so worn that it became unsafe. The lengths of rope used in the derrick were called "falls." The ordinary limit of safety in their use was proved to have been from fourteen to twenty days; rarely less than that and sometimes considerably more. Everybody connected with the business knew the consequences of excessive use and the necessity of frequent changes of the falls, but at varying and uncertain periods of time. The fall which was sound and safe in the beginning of a morning's work might become frayed and dangerous before night, and if it did would become so before the eyes of all the workmen dependent upon it for its use. And that is true because the proof given by the plaintiff shows clearly that the rope which is sound originally becomes pulpy internally only when use has affected it externally.

Now, it is conceded that the defendants kept on hand and ready for use at any moment an adequate supply of these falls and of the best and most approved character. After purchasing a coil of rope, measuring about one thousand feet in length, it was at once cut up into falls, the ends were tied to keep them from unravelling, each fall was marked with a tag stating its length, and they were then hung up in a dry store-room under lock and key, and so kept ready for immediate use and meantime protected from the weather or from injury. If one was wanted word was sent to the office and the new fall at once supplied for use at the dock. Usually the engineer or his assistant made the application, but anybody engaged in the work could give the notice and get the new fall. It does not appear that any such application coming from any of the workmen was ever unheeded or refused. The workmen, therefore, were left in a position of perfect safety as to the sufficiency of the falls against everything save their

own negligence or error of judgment. The rope was swing-ing before their eyes, and would disclose its approaching weak-ness on the surface before it became rotten or pulpy within, and they were able to know how long it had been used, and so whether prudence required it to be changed. They were at liberty, and knew they were at liberty, to supplant one which exhibited marks of weakness with another both new and sufficient from the supply kept on hand. They were in the daily habit of observing its condition, and it was specially the custom of the engineer to do so. He had examined it a day or two before the accident and deemed it safe.

On this state of facts the court charged that it was the duty of the master to the servants to watch the use of the rope by them and its changes of condition, that the engineer was his agent and deputy for such purpose, and that the negligence of the engineer, if it existed, was that of the master. The doctrine at once renders unexplainable all the line of cases in which some defect in a machine has occurred from its use, and the master has been held freed from responsibility if the machine furnished was originally safe, and he neither knew nor ought to have known of the existence of the defect, for it puts the duty of daily watch and discovery on him, and so requires no notice or complaint or lapse of time to put him in default.

I think the doctrine asserted was an extension of the master's duty beyond its natural and proper limits. Probably the existing rule was founded upon the truth that certain things essential to the safety of the servants must necessarily in the management of the business emanate from the master and remain in his absolute control, and so the servants should not be responsible to one another for defects which they could not repair for lack both of authority and means. The servants cannot furnish the machines. That is the master's right and duty. But the servant who uses them can and should keep them in order for their proper and safe daily use when fur-nished with the necessary means of so doing and when per-fectly capable of correcting the defect.

It is undoubtedly true, as we have often said, that it is the duty of the master to keep a machine or appliance in order, and that he cannot delegate the duty so as to escape responsibility. But that is a general rule and has its qualifications and limitations. One of those is that it is not the master's duty to repair defects arising in the daily use of the appliance, for which proper and suitable materials are supplied, and which may easily be remedied by the workmen, and are not of a permanent character, or requiring the help of skilled mechanics. An apt illustration will be found in the case of *McGee* v. *Boston Cordage Co.* (139 Mass. 445). The machine was used for the passage of hemp over heckle pins. These sometimes became bent so that the fiber clogged, and then the machine was stopped and the workman drove out the bent pin and inserted a new one from a supply furnished by the master for that purpose. The change was held to be, not the duty of the master, but that of the servants, and an ordinary detail of their daily duty. It would have been almost absurd to have held otherwise. So in *Webber* v. *Piper* (109 N. Y. 496) the master had supplied the means of sharpening saws which had become dull, and duplicate saws to take their place when removed, and had assigned the duty of removal to one of his servants whose neglect, which resulted in an injury, was held to be that of a fellow-servant. The same doctrine was declared in *Johnson* v. *Boston Tow-boat Co.* (135 Mass. 209), a case almost exactly like the one before us, and in which the injury resulted from the use by the servants of an unsound rope instead of substituting a new one which the master had supplied. In that case it was said that the master "having provided sufficient appliances, a part of which required occasional renewal from the wear and tear of the use for which it was intended and provided sufficient means for such renewal and employed Moore to have the superintendence of the workmen and the apparatus and appliances, the use of the means provided for keeping the tackle in suitable condition was as truly a part of Moore's duty as servant as was the use of the apparatus for the direct purpose of the business, and in performing that duty

he was a fellow-servant with the plaintiff." The doctrine thus declared was not at all repudiated or even modified by the later case of *Daley* v. *Boston & Alb. R. Co.* (147 Mass. 101), upon which the General Term rely. In that case the operatives who managed the machine had no duty or responsibility as to a change of the ropes, but were dependent upon the judgment and consent of two other employes who were not claimed to be fellow-servants of the workmen. And that case draws clearly the distinctions between an original defect in the rope provided and one occurring from its use, and between the duty of ordinary repairs devolving upon the servants and those of a permanent or special character which attach to the master. What was said as to the custody of the ropes had some force in that case but has no application to the one before us. Here there does not appear to have been at the dock any suitable place for keeping the spare falls, and it was neither negligence nor imprudence to put them under cover or protect them by a lock so long as they were at all times subject to the needs or requirements of the workmen.

The cases cited and their doctrine appear to be founded upon what is determined to be the implied contract relation between the master and servant. Their mutual duties grow out of that relation and change and vary as it is changed or varied by the facts which indicate and measure it. Where those facts show that in the understanding of both parties a class of ordinary repairs are to be made by the servants with materials furnished by the master for that express purpose; that they and he regard it as a detail of their own work; that it is something entirely within their capacity and not dependent upon the skill of a special expert; and that the necessity springs from their daily use of the appliance, occurs at different and unknown periods in their service, and is open to their observation in the absence of the master; the inference is inevitable that the contract relation betwen the parties makes it a duty of the servants and a detail of their work to correct the defect when it arises with the materials furnished.

The cases cited by the respondent do not touch the question.

In one the defect was in an engine which only an expert could repair and for which the servant was furnished with no materials. (*Slater* v. *Jewett*, 80 N. Y. 50.) In one the chain of an elevator had grown thin and no new one was supplied. (*Corcoran* v. *Holbrook*, 59 N. Y. 518.) In two the cars or the platform were defective when supplied by the master. (*Gottlieb* v. *N. Y., L. E. & W.*, 100 N. Y. 462; *Benzing* v. *Steinway*, 101 id. 547.) And in one the master permitted the use of a rope which was rotten from a year's exposure to the weather and without supplying a new one. (*Baker* v. *Allegheny V. R. R. Co.*, 95 Pa. St. 211.) In *Cone* v. *D., L. & W. R. R.* (81 N. Y. 208) the defect was in the engine which the servants using it could not be required or expected to repair, and in *Murray* v. *Usher* (117 N. Y. 543) the platform fell from an original defect in construction.

In the present case the master exercised all the reasonable care required. The rope had not been in use so long as to charge the master with knowledge that it had become unsafe, and he had a right to assume that the servants would take no needless risks. So far even as the engineer is concerned, there seems to have been on his part an error of judgment, but not necessarily any negligence in the performance of his duty.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.