HANNAH SMITH, as Administratrix, etc., of GEORGE W. SMITH, Deceased, Respondent, *v.* THE EMPIRE TRANSPORTATION COMPANY, Appellant.

*Master and servant — place of work becoming unsafe from the manner in which the work is being conducted — master not liable for injuries resulting therefrom.*

The fact that the place where services are being performed may become unsafe during the progress of the work, resulting from the manner in which the work is done by co-employees, furnishes no ground for charging the master with liability for personal injuries occasioned by the unsafe condition thus produced.

Upon the trial of an action brought to recover damages arising from the death of the plaintiff's intestate, caused by alleged negligence, it appeared that the plaintiff's intestate and others were at work in the hold of the defendant's steam propeller, for the purpose of relaying the wooden floor, which at the close of the previous season had been taken up and placed in sections against the stanchions extending from the keelson to the main deck in line along the center the whole length of the midships.

The distance between the stanchions was a little less than four feet, except at the hatch, where two of them were separated by the distance of eleven feet and seven inches at the floor, and so inclined that at the deck they were seven feet

and seven inches apart. The wooden flooring was in thickness a little more than two inches, and was in sections of eight and one-twelfth feet in length and five and eight-twelfths feet in width, and when laid they made three courses on each side of the line of stanchions. As they were placed standing against the stanchions when taken up, all the sections had the direct support thereof, except those sections which were at or under the hatch, where the distance between the stanchions was greater than the length of the sections. There they were placed against the ends of the others, which overlapped the stanchions on each side of the wide opening.

While the plaintiff's intestate was engaged in painting a portion of an iron tank under the hatch on the starboard side of the boat some of the workmen were engaged in removing the sections standing on the port side of the line of stanchions, and in doing so a section. which had only the support of the overlap of others resting against the stanchions, fell upon the plaintiff's intestate, producing the injury which resulted in his death.

*Held,* that the removal of the support of the section and its fall upon the plaintiff's intestate were caused by the manner in which the workmen conducted the work in which they were engaged, and that the consequences to the decedent were within the hazards incident to the service, and which were assumed by him when he entered it;

That as the flooring stood when the work was commenced the danger of accident was not within reasonable apprehension; that the accident which followed could not have occurred otherwise than in the process of the work of removing the means of support furnished by some of the sections to others beneath the hatch, and that the defendant was not chargeable with negligence.

APPEAL by the defendant, The Empire Transportation Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 8th day of May, 1895, upon the verdict of a jury rendered after a trial at the Erie Circuit, and also from an order entered in said clerk's office on the 8th day of May, 1895, denying the defendant's motion for a new trial made upon the minutes.

*John G. Milburn,* for the appellant.

*Mackey & Draper,* for the respondent.

BRADLEY, J.:

The plaintiff's intestate, while in the service of the defendant, in March, 1894, received an injury resulting in his death. He and others were engaged in the hold of the defendant's steam propeller, in the port of Buffalo. The purpose of the work was to relay the wooden floor, which at the close of the season of 1893 had been

taken up, and placed in sections against the stanchions extending from the keelson to the main deck in line along the center the whole length of the midships, 100 feet.

The distance between the stanchions was a little less than four feet, except at the hatch, where two of them were separated by the distance of eleven feet and seven inches at the floor, and so inclined that at the deck they were seven feet and seven inches apart.   The wooden flooring was in thickness a little more than two inches, made of oak and pine lumber, and was in sections, eight and one-twelfth feet in length and five and eight-twelfths feet in width.   When laid they made three courses on each side of the line of stanchions.

As they were placed standing against the stanchions when taken up, all the sections had the direct support of the stanchions except those sections which were at or under the hatch, where the distance between the stanchions was greater than the length of the sections. There they were placed against the ends of the others, which overlapped the stanchions on each side of this wide opening.   The workmen had scraped and painted the iron surface of the water tank to be covered by the floor on the starboard side, except a space along near the stanchions which had been occupied by the sections standing there. They had put down the outer courses of the floor sections and laid upon them the sections to constitute the course adjacent to the stanchions on that side.   The plaintiff's intestate was engaged in painting the uncovered portion of the iron tank under the hatch on the starboard · side when a section of the floor standing on the port side of the line of stanchions fell upon him, producing the injury in question.   Some of the workmen were then engaged in removing the sections standing on the port side of the line of stanchions and laying them on that side, and it was on the removal of one of them that the section fell on the plaintiff's intestate.   As the one that fell had only the support of the overlap of others resting against the stanchions, the fall of it was evidently directly attributable to the removal of one or more of the sections standing on the port side.

The evidence of the only witness who gave any description of the occurrence was that after they got through on the starboard side they went over to the port side.   " There were some sections standing up under this hatch, and these sections were lapped so as to hold them there secure.   After we had taken five or six, something like

that, down and laid them on the port side we took hold of another one that was standing there and put it in its place and somehow or another this section fell over upon Smith."

The only question requiring consideration is whether there is any support in the evidence for the charge of negligence on the part of the defendant.

When the decedent went to work for the defendant he assumed the ordinary hazards incident to the service, which included the consequences of the negligence of his co-employees. The second mate, who was foreman of this work in which they were engaged, was the co-employee of the other workmen. (*Mahoney* v. *Vacuum Oil Co.*, 76 Hun, 579, and cases there cited.) The trial court so held, but submitted to the jury the question whether or not the defendant was chargeable with negligence for not furnishing a safe place for the decedent to do the work which he was employed to perform. The duty of the defendant was to use reasonable care to that end, and if it appears that the injury was attributable to the failure of the defendant to do so the charge of its negligence is supported. When the decedent went into the defendant's service in the hold of the steamer the sections of the wooden flooring were standing on either side of the line of stanchions. The place appeared to be and in the then situation was entirely safe.

The safety under the hatch on the starboard side near the line of the stanchions may have been reduced by the removal of the standing sections from that side. But the opposite section on the port side, which afterwards fell, was not dependent upon them for support. It remained standing after they were removed. The disturbance which caused the section to fall was occasioned by the removal of one or more of the sections on the port side, which in some manner contributed to support and sustain it in its position. This was the act of the workmen, and if the fall of the section was the result of the want of their due care, or of that of any one of them, the negligence was that of the co-employee of the decedent for which the defendant is not responsible to the plaintiff. This was the view of the trial court, and the jury were instructed that if they found that the workmen used such care and that the section fell by reason of the manner in which it was placed there, the question whether it was negligence on the part of the defendant to leave it where and as

it was placed, was for the jury to determine, and if they found that fact in the affirmative, the plaintiff was entitled to recover unless the negligence of her intestate contributed to the injury sustained by him. It is quite difficult to see in the evidence any support for the proposition that the defendant was chargeable with negligence for want of safety in the hold of the steamer where the decedent was engaged in the work which he was employed to perform.

The flooring was taken up and in sections placed lengthwise along the line of stanchions as it usually had been at the close of the season of navigation, to permit it to dry out and to enable the defendant to clean and paint the iron surface beneath it preparatory to fitting the vessel for use the coming season. The manner in which the sections were placed on either side of the stanchions, and the support those located under the hatch had, to maintain them in position, were apparent to the workmen who were engaged in removing them and placing them in position. They could not, with the exercise of any reasonable care, fail to observe that in the space under the hatch the sections were dependent for support upon the overlap of the adjacent ones which rested against the stanchions, and it is evident that the disturbance or removal of that support by the workmen in the service caused one of them to drop from its inclined standing position. The lessening of the safety in condition as it existed when the decedent went into the service, arose from the manner in which the work in its detail was performed by the co-employees of the plaintiff's intestate.

There is no question about the competency of the workmen and sufficiency in number to do the work.

The manner of doing it was intrusted to them. The management in process of the performance of the work necessarily rested in the care, discretion and judgment of those engaged in the service or of their foreman.

The removal of the support of the section, and its fall with the unfortunate result, were caused by the manner in which the workmen conducted the work in which they were engaged. This is evident from the fact that this section was supported on the port side of the line of stanchions after the sections were removed from the starboard side, and it could be thus supported only by the overlap of the sections standing against the stanchions. And so far as appears by the

facts derivable from the evidence, the consequences to the decedent were within the hazards incident to the service and which were assumed by him when he entered into it. (*Cullen* v. *Norton*, 126 N. Y. 1; *Hudson* v. *Ocean S. S. Co.*, 110 id. 625; *McCampbell* v. *Cunard S. S. Co.*, 144 id. 552.)

The fact that the place where services are performed may become unsafe in the process of the work, and resulting from the manner it is done by co-employees, furnishes no ground to charge the master with liability for physical injuries occasioned by the unsafe condition thus produced. (*Loughlin* v. *State of New York*, 105 N. Y. 159; *Cregan* v. *Marston*, 126 id. 568.)

So far as we are advised by the evidence the danger of accident was not within reasonable apprehension, as the flooring stood when the work was commenced, and the accident which followed could not occur otherwise than in the process of the work of removal of the means of support furnished by some of the sections to others beneath the hatch. Until this was done by the workmen there was no want of a reasonable degree of safety. The evidence does not show any existing condition inherently dangerous in the combination of the sections of the flooring, or a condition from which danger in the course of the work could reasonably be apprehended from the exercise of reasonable care in the removal of those sections from the positions in which they were to the places designed for them to constitute the floor of the hold of the vessel.

The proposition, therefore, upon which a master may be liable to his employee by reason of his failure to furnish him a safe place to work, does not seem applicable to the present case, as presented by the evidence.

In the cases to which our attention is called by the plaintiff's counsel, the unsafe conditions were not produced by the performance of the work in which the employees were engaged. In *McGovern* v. *C. V. R. R. Co.* (123 N. Y. 280) the defendant failed to use the care required of it to see that the place where the servant was put to work in the elevator was then safe, when in fact it was otherwise.

The same may be said of *Stuber* v. *McEntee* (142 N. Y. 200), where the plaintiff's intestate was employed to work in a trench which was in an unsafe condition for the service. Similar in its

nature was *Kranz* v. *L. I. Ry. Co.* (123 N. Y. 1). And for a like reason a recovery against the defendant was affirmed in *Pantzar* v. *Tilly Foster Iron M. Co.* (99 N. Y. 368). It there appeared that the place where the plaintiff was at work for the defendant in the mine of the latter was rendered unsafe by an insecure mass of rock in an overhanging cliff, by the fall of which he was injured.

The conclusion is that the verdict was not supported by the evidence.

The judgment and order should be reversed and a new trial granted, costs to abide the event.

Lewis and Ward, JJ., concurred.

Judgment and order reversed and new trial granted, costs to abide the event.