discovering its true condition, do anything inconsistent with the vendor's ownership. Brown v. Foster, supra, was a case arising out of a contract for the sale of an engine, boiler, and sawmill; and, in relation to the acceptance of the articles, its facts were not unlike the case under consideration. It was there said that the vendee was entitled to a reasonable time for examination,—"long enough to put the machinery in motion, and see it operate; and he might, for that purpose, do with it whatever was necessary." But, because the vendee in that case used the machinery in the prosecution of his business, and, although complaining, and knowing its defects, did not intermit its use, the court held there was an unequivocal act of acceptance. Chambers v. Lancaster, supra, arose out of a contract for the erection and completion of a stone-crushing plant. The company used the crushers for five months; but, although it was said, in the opinion, that the testimony showed such a deviation from the contract that the company might have rejected the crushers, the court held that the use of the machines after knowledge of the defects was a conclusive election to accept them.

In this case, it appears that, after the engine and machinery were started, the defendants complained to the plaintiffs that the engine did not work right. The plaintiffs thereupon sent one of their employés to the yard, and some repairs were made upon it. Thereafter the defendants continued to use it in the prosecution of their business, and, although continuing to make complaint as to its deficiencies, they never returned, or offered to return, it or any other part of the machinery. These facts establish conclusively an acceptance of the articles specified in the contract. The referee did not specifically find an acceptance by the defendants; and it is objected that the judgment cannot, in the absence of such a finding, be sustained upon that theory. The testimony which I have referred to, however, can lead to no other conclusion; and, as it is undisputed that the defendants retained and used in the business the engine and all the machinery delivered, the court may presume a finding of acceptance for the purpose of sustaining the judgment.

If the referee, in deciding the case, applied to it the rule of substantial performance, the defendants have no cause to complain. They have received, in the allowance of $1,000 made to them for defects in the engine, the benefit of a ruling more favorable to them than they would have been entitled to under the application to the case of a more correct rule of law.

There is no other question which requires notice. The judgment must be affirmed, with costs. All concur.

---

(5 App. Div. 614.)

SIMPSON v. CENTRAL VERMONT R. CO.

(Supreme Court, Appellate Division, Third Department. May 21, 1896.)

1. MASTER AND SERVANT—NEGLIGENCE OF FELLOW SERVANT.

A new wick in the headlight of a locomotive, to replace an old one, is a supply, and not a repair; and where a rule of the railroad company re-

quires the engineer to see that the headlight is in order, and he fails to do so, in consequence of which a fireman on another train is injured, the injury is the result of the negligence of a fellow servant.

2. SAME—RULES TO GOVERN SERVANTS.

In an action for injuries to a locomotive fireman caused by a collision, it appeared that a train was standing on the main track at a station where plaintiff's train was to pass it, and that the headlight had gone out, and a common lantern been put in. Plaintiff's train, running about 7 miles an hour, came within 200 feet of the other train before it was discovered, and it was then too late to prevent a collision. A rule of defendant required trains to pass the place of the accident under full control. By another rule, the standing train should have been side-tracked before the colliding train arrived. *Held,* that the accident was not caused by a failure to make rules, but by a nonobservance of the rules already made.

Appeal from circuit court, St. Lawrence county.

Action by Patterson Simpson against the Central Vermont Railroad Company for personal injuries. From a judgment entered on a nonsuit granted at the close of plaintiff's testimony, plaintiff appeals. Affirmed.

The action is to recover on account of injuries which the plaintiff, a fireman upon a locomotive engine of the defendant, received in jumping from the engine as it was about to collide with another engine in the nighttime. The engine upon which plaintiff was employed was hauling a freight train running "wild,"—that is, on telegraph orders, and not on schedule time,— and was approaching from the west, after 11 o'clock at night, the station at Norwood, upon the main track of the Ogdensburg &·Lake Champlain Railroad, operated by the defendant, when the plaintiff saw, about 100 feet in front of his engine, another engine, standing upon the main track. The latter engine, 76, was in fact standing still, but the plaintiff thought it was moving towards him, when, in his sudden fright, he jumped from his engine, and one of his legs was crushed beneath the wheels. ·Engine 76 was facing the approaching train. The light in its head lamp—a reflector—had gone out, and a lantern had been placed in the head lamp. This gave a much feebler light than that of the usual headlight. The light went out in the head lamp of engine 76 because the wick was too short. Wicks and other lamp supplies were kept at the roundhouse in Malone, whence engine 76 left the same evening, hauling a freight train, running wild. The headlight had gone out of the same engine the night before on its way from Malone to Ogdensburg, and a lantern was placed in the reflector. By the rules, it was the duty of the engineer to see that his engine was in order, including the head lamp. Another engineer and fireman took engine 76 back to Malone from Ogdensburg the next morning before daylight. The lamp burned until daylight. The same engineer and fireman were in charge of engine 76 when the collision occurred. It was not the plaintiff's duty to inspect the lamp, and procure a new wick, unless ordered to do so. Engine 76 had received an order at Norwood to meet engine 89 there, and then run wild to Ogdensburg. It was then its duty to take the side track, the rule providing that "west-bound trains of the same class will take the side track at meeting points, except in cases where it is impracticable." The engineer of 76 was about to back easterly, to take the side track, when the train drawn by 89 came up, and the collision occurred. The rules provided: "The speed of all second-class, mixed, and wild trains must be reduced not to exceed four miles an hour, and all trains must be under full control beyond the yard-limit signs east and west of the Norwood yard." "Engineers approaching stations will bring their trains under full control before passing the first switch. When moving up to stations, the bell must be rung, and all proper caution used." The first switch above referred to, to the west, is three-quarters of a mile distant from the station. The plaintiff testified that his train was running about four miles an hour. The engineer testified that he was running about seven miles an hour, and was about 200 feet

from it, when he saw engine 76. He instantly rang for brakes, but could not stop in time.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

C. A. Kellogg, for appellant.
Louis Hasbrouck, for respondent.

LANDON, J. The plaintiff insists that he had the right to go to the jury upon the question whether defendant was negligent in sending out engine 76 improperly equipped as to its headlight. The defect was that the wick was too short. A supply of new wicks was kept by the defendant at Malone, from which station engine 76 was dispatched westward to Ogdensburg, stopping at Norwood. A new wick to replace an old one is a supply, and not a repair, and, by the defendant's rules, the engineer should have seen that the supplies which defendant had provided and placed within his command were ample for the trip. To provide these supplies for use was the master's duty; to take them as they were needed for use was servant's duty. Cregan v. Marston, 126 N. Y. 568, 27 N. E. 952; Harley v. Manufacturing Co., 142 N. Y. 31, 36 N. E. 813; Kaare v. Iron Co., 139 N. Y. 369, 34 N. E. 901; McDonald v. Railroad Co., 63 Hun, 587, 18 N. Y. Supp. 609. This request was properly refused.

The plaintiff also insists that he had the right to go to the jury upon the question whether the defendant was not negligent in failing to promulgate sufficient rules for the meeting of wild trains at night. The difficulty does not appear to be with the rules, but in the failure of the defendant's servants to obey them upon this occasion. Engine 76 should have taken the side track after receiving notice that it was to pass 89 at Norwood. The engineer or conductor was too slow about it. Engine 89 ought to have been under the control specified by the rules, from the first switch eastward. If the engineer had had it under such control, he could have stopped it in 70 feet. It may well be that he relaxed his observance of the rule because he did not see the light in the head lamp of 76, or mistook it, when he first saw it, for a station light, or some other; but such relaxation was none the less a violation of the rule.

Plaintiff's counsel contends that defendant might have made further rules, and he suggests one, namely, that all engines and trains should be kept off the main line while detained at stations awaiting orders. So long as the rules which are promulgated will, if observed, secure safety, it is wiser to leave the making of new rules to the company.

The judgment is affirmed, with costs. All concur.