CULLEN, J.
This action is brought by the administrator of the •servant against the master for negligence causing* the servant’s •death. The defendant was equipping its surface railroad for opertion by electricity. For this purpose it was constructing and affixing to the structure of the elevated railroad a channel or trough to carry the trolley wire. Cross beams were fastened to the flanges of the elevated railroad. To these were bolted the channels or troughs. The plaintiff’s intestate was engaged in boring holes in a cross beam throng which to pass a bolt. In that work he was seated on the beam. While at work, the cross beam broke, precipitating him to the ground, by which he received injuries from which he died two days later. The deceased weighed about 120 pounds. It was conceded that the beam, if sound, should have sustained three or four times this weight. The only evidence as to the condition of the beam was given by two co-employes of the deceased, both of whom testified that the break was a long one. One •of the witnesses further testified that on examinating the broken -ends of the beam he found in the interior a knot or carl, but that on the surface of the stick the grain was straight, and there was no appearance of the knot. A carpenter placed on the stand as an expert was asked by plaintiff if it were possible for a curl to exist in a stick of spruce three by four inches, and not be visible on *587 the outside of the stick. This was excluded, and the defendant excepted. Evidence showed that the timber was of good character, and bought from reputable dealers. It was conceded that in a quantity of such timber there will genrally be found defective pieces. For this reason it is necessary to examine or test the timber before use. It was shown that the timber was cut into proper lengths in the defendant’s yard; that all pieces showing knots •or curls were rejected. When the stick were brought upon the ground to be put in place, they were subject to tests by striking them on the pavement and listening to the sound, and by trying their strength by jumping upon them or straining them between the spokes of the wagon wheels. It may properly be conceded that the breaking of the stick, under the circumstances, proved its defective character. But to establish negligence on the part of the -defendant it was necessary to go still further, and to show that the exercise of proper case in inspection would have discovered the •defective character of the stick, and that the want of such care was a failure in the performance of the duty of the master, and not in that of a fellow servant. Assuming that, had the question excluded been answered, the answer would have been that the curl would have shown on the surface, I do not see that this evidence would have aided the plaintiff. His previous witness had testified that there was a curl in the interior, and that there was no indication of it on the surtace, but that on the surface the grain was straight. The evidence excluded, if admitted, would have tended as much to discredit the statement that there was a curl in the interior of the beam as that there was ño appearance of it at the ■ surface, and this statement was the only evidence to establish the appearance of any defect. But if it be assumed that there was evidence from which the jury might have found that there was negligence in the inspection or examination of the stick which broke, the question remains, was the negligence the negligence of the master? The plaintiff contends that the case fails within the principle that a master is bound to furnish a reasonably safe place for his servants to work. If this rule is applicable to the present case, then it would follow that for the negligence of any servants to whom the master had committed the duty of providing a safe place, the master himself would be liable. I think, however, that this is not the case of “ a place,” within the meaning of the rule. As stated in Butler v. Townsend, 126 . Y. 105, 26 N. E. 1017, doubtless, in one sense of the term, the employe must always be in some place; and doubtless, also, the place, in a certain sense, is not safe if an accident occurs there. But the rule that the master must provide a safe place for work only applies where the work and the place is not connected,—where the work is not in the construction of the place, as in the case of a mill, a factory, mine, ship, well, etc. In the present case the cross beam was not furnished for the purpose of providing the plaintiff a place to work, but as a part of the structure which he and the other workmen were engaged in erecting. The defendant might have provided a beam of such dimensions as to have been wholly unable to sustain the plaintiff’s weight, yet, if good in its character, and sufficient *588 for the purpose intended, there could have been no liability on the part of the defendant for that reason alone. I do not mean to say that the defendant owed no duty to its workmen in the premises. If there was a latent danger of which it had knowledge, it should have apprised the workmen. But the distinction I seek to impress is that here the beam was part of the structure,—the common work upon which all the employes were employed,—and the use of it by the deceased for support the mere incident. In the case of nearly all buildings or structures it is the common practice to use the part of the structure that may at the time be erected as a means to enable the workmen to obtain positions from which to prosecute the remaining work. It makes avast difference in the question of the liability of the master whether, when a servant meets with an accident from a defect in the previous work, occurring through the negligence of a servant engaged in its construction, the negligence is to be deemed as arising from a failure to provide a safe place, or as negligence in the general enterprise in the prosecution of which all the workman are engaged. If the first, the master is liable, even though the negligence is that of a servant, because the duty is that of the master; if the second, it is the negligence of a coservant, and the master is not liable for it. If the workman who placed the beams on the flanges of the elevated railroad had been negligent, and improperly fastened them, and from this canse the accident to the plaintiff’s intestate had occurred, if the case is one of a safe place, the defendant would have been liable. Still I think such a proposition would,hardly be contended for. Would it not be clear that it was the negligence of a fellow workman? It is also clear from the some reasoning that the beam was not an appliance the furnishing of which was the master’s duty. But, though the case is neither one of a safe place nor of a safe appliance, the master had, unquestionably, duties that he owed to his employes. He was bound to supply a sufficient number of competent fellow servants and safe and suitable materials for the work. This duty was not an absolute one, but the master was required to exercise reasonable care for these purposes. There is no allegation in the complaint, and no point seems to have been made on the trial, that the fellow servants were incompetent, or insufficient in number. The master procured the timber from a reputable dealer. As a “lot” or quantity, it was good, but, as generally occurs in the purchase of a quantity of timber, some sticks were found defective, or with curls in them, and hence it was necessary to test the timber, and that such parts of the sticks as had knots or curls should be cut off or rejected. We think that the master discharged its duty when it supplied a sufficient quantity of proper and suitable material; that the choice of material,—the selection of sound beams, the rejection of such beams or parts as were defective,—work necessarily involved in the erection of structures of wood, was a detail of the work, and strictly the duty of the fellow servants. Webber v. Piper, 109 N. Y. 496, 16 S. R. 423; Butler v. Townsend, 126 N. Y. 105, 36 S. R. 508; Cregan v. Marston, 126 N. Y. 568, 38 S. R. 428; Mahoney v. Oil Co., 76 Hun, 589, 58 S. R. 297 ; Smith v. Transportation Co., 89 Hun, 588; 70 *589 S. R. 120. It is here that the vital distinction occurs between the question of a place to work and that of a part of the work itself; a question of liability to employes who. might use the structure when built, and the liability to those engaged in building it. It may well be that, after the construction of the trolley carrier, the defendant would be liable to any lineman who might be injured from its defective condition, whether occasioned by the negligence of the employes who put up the structure or those who selected the materials. Such rule does not apply to the plaintiff. In Murphy v. Railroad Co., 88 N. Y. 146, the plaintiff’s intestate was killed by the explosion of the boiler of a locomotive. The engine had been repaired in the defendant’s shop. The deceased was employed in that shop. When the repairs were finished, the boiler was tested, and during the test the explosion occurred. It was held the defendant was not liable as for furnishing a defective machine. It was there said by Judge Andrews:
“ The case of Fuller v. Jewett, 80 N. Y. 46, is a distinct authority for the proposition that, if this- locomotive had been sent out from the shop, and afterward exploded while in use on defendant’s road, injuring the engineer or other servants of the defendant, the company would have been responsible. -x" * * In this case Murphy was not, we think, a servant, in whose hands the locomotive was placed by the defendant for use, within the principle of Fuller v. Jewett, and like cases. The locomotive was sent to the repair shop in order that it might be made fit for use. The mechanics in the repair shop, including the intestate, were employed for the purpose of repairing defective locomotives. The intestate and his colaboréis in the shop were engaged in the same department of service, worked under the same control; and in the case in question the boilermakers and the other mechanice were employed to effect the same object, viz.: the reparation of the ‘Sacramento.’ It is true that the work was done in successive stages, and different parts of the work were intrusted to different persons. % * -x- rpj^g c]a[rn 0f the plaintiff’s counsel would make, the master responsible to each successive employe, whose work was prior in point of time, although done in effecting the common purpose in which all were engaged. This would, we think, be extending the liability of the master further than is warranted by the adjudged cases.”
All that is thus said as to a case of repair equally applies to a case of original construction. The main reliance of the appellant is on the case of Kranz v. Railroad Co., 123 N. Y. 1, 33 S. R. 1028. In that case the deceased, who was engaged in the defendant’s machine siiop, was ordered to clean pipes laid under ground. A trench had been opened for that purpose. While at work in the trench, the earth caved in, and the deceased was killed. I held at circuit that, as the trench was opened for the purpose of laying bare the pipes, it was a detail of the work, and the negligence was that of a co-servant. This decision was reversed by the court of appeals, who held the question was one of a safe place to work The case of Butler v. Townsend, supra, was subsequent to that of Kranz v. Railroad Co. In the latter case the deceased was killed by the *590 breaking of a defect! ve plank in a staging or platform on which he was working. It was held that it was not a question of a place, but of an appliance, and that, as the master had furnished an adequate number of proper planks, the selection of a defective plank was the negligence of a fellow servant, for which the master was not liable. The same learned judge wrote the opinion in each case. My error in the Kranz Case was, therefore, not in my acceptance of the rule, but in regarding it as applicable to the case then before me. The present case is stronger than that of Butler v. Townsend. There the staging was1 prepared either as an appliance or as ' a place upon which the servants were to do their work. Here the cross beam was provided for no such purpose. The evidence does not show that the deceased was instructed to use it to sustain his weight while he was boring the holes, nor whether he could have used some part of the elevated railroad struction for that purpose. It is often difficult to distinguish the case of a detail of the work from that of a place to work. In the case cited from Hun are to-be found two very instructive opinions on the subject, written by Judge Bradley. It may be conceded that under the authorities the dividing line between the two classes of cases is not straight, but wavering. We thing, however that this case lies well within the border line. 1
The judgment appealed from should be affirmed, with costs.
A1Í concur.