VINCENT v. MAUTERSTOCK.

(Supreme Court, Appellate Division, Second Department. May 7, 1898.)

INJURY TO SERVANT—NEGLIGENCE OF FELLOW SERVANT.

     In an action to recover damages for injuries suffered by plaintiff through the alleged negligence of defendant, it appeared that plaintiff was a carpenter employed by defendant in the erection of buildings, and that a scaffold on which he was working broke down, and precipitated him to the ground. The scaffold had been erected by two other carpenters employed by defendant, who also selected the timber for it, under the direction of the foreman; and the accident resulted from their negligence in selecting, and incorporating in the structure, as a support, a cross-grained board, which broke off. *Held* that, as the injury was due to the negligence of plaintiff's fellow workmen, defendant was not liable.

Appeal from special term, Dutchess county.

Action by Wellington Vincent against Albert Mauterstock. From a judgment for plaintiff rendered on a decision by the court after a trial without a jury, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, and WOODWARD, JJ.

Charles F. Cantine, for appellant.

W. Farrington, for respondent.

WILLARD BARTLETT, J. The plaintiff was a carpenter employed by the defendant in the erection of a number of buildings. While at work upon a scaffold on the outside of one of these buildings, a portion of the scaffold broke, and the plaintiff fell to the ground, a distance of about 20 feet, sustaining injuries to his back and nervous system, for which the learned judge, who tried the case without a jury, has awarded him damages in the sum of $1,500. The proof clearly shows that the accident was due to the insufficient strength of a plank which was used as one of the supports for the scaffold. This plank is referred to throughout the case as a bracket. It was placed upon its edge, and projected out of a window a distance of five feet or more; being spiked within the building to an upright joist running from the floor to the roof. It was not supported in any manner outside. Planks were placed upon a series of brackets of this sort along the side of the building, and this construction constituted the scaffold. The bracket which broke was a cross-grained spruce plank; and the evidence leaves no doubt that it gave way because it was cross-grained, and therefore unfit for use as such a support. The scaffold was constructed under the direction of the foreman of the gang of carpenters to which the plaintiff belonged, the actual work of construction being done by two of the other carpenters. They were told by the foreman to take the necessary timber from a pile of spruce lumber which he designated; and, according to his testimony, this kind of spruce is regarded as the best in the world. There was other testimony to the effect that the quality of the spruce was excellent. The men who built the scaffold received special instructions from the foreman, when they were picking out the material,

to be sure and get good timber. The foreman went all over the scaffold after it was completed, and was unable to discover any weakness, as the result of his inspection. It is apparent that the carpenters who selected from the pile of timber the particular bracket which broke were negligent in the examination which they made. Only one of them examined the bracket before it was put in, though both admitted that they could have told whether it was cross-grained or not by a careful inspection. The carpenter who made the examination of the various pieces of plank used said that he looked at them, and could find nothing wrong. He was well aware, however, that pieces which were cross-grained ought not to be used; for he testified that, if he had known that the bracket was a cross-grained stick of timber, he would not have put it in. If a cross-grained plank is unfit to be employed as a support for a scaffold, as this man well knew, ordinary prudence demands that the timber should be submitted to whatever examination is necessary to ascertain that it is not cross-grained; and this degree of care was certainly not observed in the present case by the men who undertook to sort out and choose the material for the scaffold. I should find no difficulty, therefore, in sustaining the judgment, if it could be upheld simply by proof that these persons were negligent. Both of them, however, were fellow servants of the plaintiff; and this fact brings the case within the doctrine of Butler v. Townsend, 126 N. Y. 105, 26 N. E. 1017; Kimmer v. Weber, 151 N. Y. 417, 45 N. E. 860; Stourbridge v. Railroad Co., 9 App. Div. 129, 41 N. Y. Supp. 128; and numerous other decisions of like tenor and effect. The scaffold was an appliance or instrumentality by means of which the carpenter work was to be done upon the building, and whatever injury the plaintiff suffered was due to the carelessness of his co-employés in selecting the material that was used as one of the supports of the platform, and which proved insufficient. In addition to proving that the bracket broke because it was cross-grained, the plaintiff attempted to prove that the plan of the scaffold was radically wrong, so that its use necessarily involved danger to the workmen who were required to go upon it. While the evidence is not very clear on that point, it certainly indicates that this plan was prescribed by the foreman, and that the other carpenters were not at liberty to depart from his instructions in that respect. If so, the master might be responsible for the peril to which the plaintiff was exposed by reason of a faulty plan of construction, but I do not think that the evidence would sustain the conclusion that the plan was in fact faulty. It is true that some of the expert witnesses for the plaintiff testified that the brackets which ran out of the windows of the building should have been supported, not only inside, but in some other way, as by an upright pole or brace outside. But most of the evidence on this subject was merely to the effect that a scaffold with these additional supports would be stronger, and on this branch of the case the only inference which can fairly be drawn seems to be that which was expressed by one of the plaintiff's witnesses, who said, "If the timber is all right, the system is all right." The ac-

cident occurred because the timber was all wrong. This was the view expressed by the learned trial judge in his opinion, which says nothing whatever about any alleged defect in the plan of the scaffold. But, as the plaintiff's fellow servants were responsible for the use of the wrong piece of timber, the master cannot be held liable, in view of the authorities already cited.

The judgment should be reversed. All concur.

HATCH, J. (concurring). The evidence is quite meager upon two subjects which seem to me to be vital in this case. If the plaintiff was employed to work upon the construction of the several buildings, in connection with all the other carpenters employed by the defendant, either singly or in connection with the others, then he must be treated as a co-servant of all who were employed upon the work, in which event the negligence of one or more of such employés would be the negligence of a fellow servant, and he would be chargeable with such negligence in the erection of the scaffold which fell. There is some evidence which would warrant an inference that he was engaged in a separate employment distinct from the other men employed, and, if so, then I think he would not be chargeable with their negligence. But he cannot so escape, unless his employment was separate and distinct. If the course of employment delegated to one or more certain specific portions of the work, and to one or more certain other portions, then I think it must be said that they were all engaged in a common employment, and negligence of one or more would be the negligence of a fellow servant. While the plaintiff testifies that he was engaged in a separate employment upon another building, and took no part in the construction of the scaffold, it does not necessarily follow that he was engaged in an employment separate and distinct from the other men, as it is consistent with a common employment for a common end. It is also consistent with a separate and distinct employment disassociated from the others. If it were the latter, I should be disposed to hold that as the scaffold was built under the direction of the defendant, and was completed when the plaintiff was directed to go upon it, and its defects were not visible and open, it would be regarded as a place to work, and not a detail of the work, in which event it would be brought within the doctrine of Kranz v. Railway Co., 123 N. Y. 1, 25 N. E. 206; and for the negligence of the employés erecting he would not be chargeable. It seems, however, from all the evidence and the findings, that the trial proceeded upon the theory that the plaintiff was engaged in a common employment with the other men, in which case the rule above noted would not apply. I reach this result with some hesitancy, and for the reason that it was devolved upon the plaintiff to show clearly what his attitude was in this respect. This may be made clear upon another trial, and permit of the application of the rule, if it ought to be applied.

The second question relates to the plan of construction. If the structure fell by reason of an inherent defect in the plan, or if it fell by reason of negligence in construction, or the use of unfit

material concurring with a defective plan of construction, then the defendant would be liable for the injuries sustained. Upon this point, however, the evidence is not sufficient from which we may say that there was a defect in the plan of construction. While there is some evidence tending to show a faulty plan, yet it is not sufficiently certain and definite to enable us to support the judgment thereon. This question, like the other, may be made sufficiently strong to uphold a recovery in favor of the plaintiff. It is not so sufficient upon this record. I therefore concur in the view that the case is one for a reversal of the judgment.