WELLINGTON VINCENT, Respondent, *v.* ALBERT MAUTERSTOCK, Appellant.

*Negligence —fall of a scaffold in consequence of the use therein of improper timber — carelessness of fellow-servants.*

In an action to recover damages for injuries sustained by the plaintiff in falling from a scaffold on the outside of a building, it appeared that the accident was due to the insufficient strength of a cross-grained spruce plank, which was placed upon its edge and projected out of a window a distance of five feet or more, being spiked within the building to an upright joist running from the floor to the roof and used as one of the supports for the scaffold.

The scaffold was constructed by two of the carpenters in a gang to which the plaintiff belonged, and under the direction of the foreman of the gang, who designated a pile of spruce lumber, which the evidence tended to show was of an excellent quality, from which they were to get the timber, and specially instructed them to pick out good timber, and went on the scaffold when it was completed, but was unable to discover any weakness therein.

*Held,* that whatever injury the plaintiff suffered was due to the carelessness of his co-employees in selecting the material which was used in the scaffold;

That the plaintiff could not succeed, under the circumstances, in the absence of proof that the foreman had prescribed a faulty plan of construction, which the carpenters were required to comply with in the erection of the scaffold.

APPEAL by the defendant, Albert Mauterstock, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Dutchess on the 11th day of November, 1897, upon the decision of the court rendered after a trial at the Dutchess County Special Term.

*Charles F. Cantine,* for the appellant.

*W. Farrington,* for the respondent.

WILLARD BARTLETT, J.:

The plaintiff was a carpenter employed by the defendant in the erection of a number of buildings. While at work upon a scaffold on the outside of one of these buildings, a portion of the scaffold broke and the plaintiff fell to the ground, a distance of about twenty feet, sustaining injuries to his back and nervous system, for which the learned judge who tried the case without a jury has awarded him damages in the sum of $1,500. The proof clearly shows that the accident was due to the insufficient strength of a plank which was used as one of the supports for the scaffold. This plank is referred to throughout the case as a bracket. It was placed upon its edge and projected out of a window a distance of five feet or more, being spiked within the building to an upright joist running from the floor to the roof. It was not supported in any manner outside. Planks were placed upon a series of brackets of this sort along the side of the building, and this construction constituted the scaffold.

The bracket which broke was a cross-grained spruce plank, and the evidence leaves no doubt that it gave way because it was cross-grained, and, therefore, unfit for use as such a support. The scaffold

SECOND DEPARTMENT, MAY TERM, 1898.            [Vol. 30.

was constructed under the direction of the foreman of the gang of carpenters to which the plaintiff belonged, the actual work of construction being done by two of the other carpenters. They were told by the foreman to take the necessary timber from a pile of spruce lumber which he designated, and according to his testimony, this kind of spruce is regarded as the best in the world. There was other testimony to the effect that the quality of the spruce was excellent. The men who built the scaffold received special instructions from the foreman, when they were picking out the material, to be sure and get good timber. The foreman went all over the scaffold after it was completed, and was unable to discover any weakness, as the result of his inspection.

It is apparent that the carpenters who selected from the pile of timber the particular bracket which broke, were negligent in the examination which they made. Only one of them examined the bracket before it was put in, though both admitted that they could have told whether it was cross-grained or not by a careful inspection. The carpenter who made the examination of the various pieces of plank used, said that he looked at them and could find nothing wrong. He was well aware, however, that pieces which were cross-grained ought not to be used, for he testified that if he had known that the bracket was a cross-grained stick of timber he would not have put it in. If a cross-grained plank is unfit to be employed as a support for a scaffold, as this man well knew, ordinary prudence demands that the timber should be submitted to whatever examination is necessary to ascertain that it is not cross-grained; and this degree of care was certainly not observed in the present case by the men who undertook to sort out and choose the material for the scaffold.

I should find no difficulty, therefore, in sustaining the judgment if it could be upheld simply by proof that these persons were negligent. Both of them, however, were fellow-servants of the plaintiff, and this fact brings the case within the doctrine of *Butler* v. *Townsend* (126 N. Y. 105); *Kimmer* v. *Weber* (151 id. 417); *Stourbridge* v. *Brooklyn City R. R. Co.* (9 App. Div. 129), and numerous other decisions of like tenor and effect. The scaffold was an appliance or instrumentality by means of which the carpenter work was to be done upon the building; and whatever injury the plaintiff suffered was due to the carelessness of his co-employees in selecting

the material that was used as one of the supports of the platform, and which proved insufficient.

In addition to proving that the bracket broke because it was cross-grained, the plaintiff attempted to prove that the plan of the scaffold was radically wrong, so that its use necessarily involved danger to the workmen who were required to go upon it. While the evidence is not very clear on that point, it certainly indicates that this plan was prescribed by the foreman, and that the other carpenters were not at liberty to depart from his instructions in that respect. If so, the master might be responsible for the peril to which the plaintiff was exposed by reason of a faulty plan of construction; but I do not think that the evidence would sustain the conclusion that the plan was in fact faulty. It is true that some of the expert witnesses for the plaintiff testified that the brackets which ran out of the windows of the building should have been supported, not only inside, but in some other way, as by an upright pole or brace outside. But most of the evidence on this subject was merely to the effect that a scaffold with these additional supports would be stronger; and on this branch of the case the only inference which can fairly be drawn seems to be that which was expressed by one of the plaintiff's witnesses, who said: "If the timber is all right the system is all right." The accident occurred because the timber was all wrong. This was the view expressed by the learned trial judge in his opinion, which says nothing whatever about any alleged defect in the plan of the scaffold. But as the plaintiff's fellow-servants were responsible for the use of the wrong piece of timber, the master cannot be held liable, in view of the authorities already cited.

The judgment should be reversed.

All concurred, except CULLEN, J., absent.

HATCH J. (concurring):

The evidence is quite meagre upon two subjects which seem to me to be vital in this case. If the plaintiff was employed to work upon the construction of the several buildings, in connection with all the other carpenters employed by the defendant, either singly or in connection with the others, then he must be treated as a co-servant of all who were employed upon the work, in which event the negligence of one or more of such employees would be the negli-

gence of a fellow-servant, and he would be chargeable with such negligence in the erection of the scaffold which fell. There is some evidence which would warrant an inference that he was engaged in a separate employment, distinct from the other men employed, and, if so, then I think he would not be chargeable with their negligence. But he cannot so escape unless his employment was separate and distinct. If the course of employment delegated to one or more certain specific portions of the work, and to one or more certain other portions, then I think it must be said that they were all engaged in a common employment, and the negligence of one or more would be the negligence of a fellow-servant. While the plaintiff testifies that he was engaged in a separate employment upon another building, and took no part in the construction of the scaffold, it does not necessarily follow that he was engaged in an employment separate and distinct from the other men, as this is consistent with a common employment for a common end. It is also consistent with a separate and distinct employment disassociated from the others. If it were the latter, I should be disposed to hold that as the scaffold was built under the direction of the defendant, and was completed when the plaintiff was directed to go upon it, and its defects were not visible and open, it would be regarded as a place to work and not a detail of the work, in which event it would be brought within the doctrine of *Kranz* v. *The Long Island R. Co.* (123 N. Y. 1), and for the negligence of the employees erecting he would not be chargeable. It seems, however, from all the evidence and the findings, that the trial proceeded upon the theory that the plaintiff was engaged in a common employment with the other men, in which case the rule above noted would not apply. I reach this result with some hesitancy, and for the reason that it was devolved upon the plaintiff to show clearly what his attitude was in this respect. This may be made clear upon another trial and permit of the application of the rule, if it ought to be applied.

The second question relates to the plan of construction. If the structure fell by reason of an inherent defect in the plan, or if it fell by reason of negligence in construction, or the use of unfit material, concurring with a defective plan of construction, then the defendant would be liable for the injuries sustained. Upon this point, however, the evidence is not sufficient to permit us to say

that there was a defect in the plan of construction. While there is some evidence tending to show a faulty plan, yet it is not sufficiently certain and definite to enable us to support the judgment thereon. This question, like the other, may be made sufficiently strong to uphold a recovery in favor of the plaintiff. It is not so sufficient upon this record.

I, therefore, concur in the view that the case is one for a reversal of the judgment.

Judgment reversed and new trial granted, costs to abide the event.