McDONOUGH v. CLONBROCK STEAM BOILER CO.

(Supreme Court, Appellate Division, Second Department. June 8, 1906.)

MASTER AND SERVANT—SAFE PLACE FOR SERVANT TO WORK—NEGLIGENCE OF FELLOW SERVANT.

   A gallery in process of construction on a vertical cylindrical boiler for the use of engineers and firemen when attending the boiler is not the place of work of an employé whose duty is to construct thereon a hand rail supported by iron stanchions, but constitutes the structure itself, and the employer is not liable for defective riveting of the parts of the structure done at another time by another employé.

Appeal from Trial Term, Kings County.

Action by Thomas F. McDonough against the Clonbrock Steam Boiler Company. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed, and new trial granted.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and GAYNOR, JJ.

Charles C. Nadal (William D. Stiger, on the brief), for appellant.

JENKS, J. The action is by servant against master for negligence. The master was constructing galleries on a vertical cylindrical boiler 40 feet high and 20 or 30 feet in diameter. These galleries were a common feature of such boilers, and were designed for the use of the engineers, firemen, and the like, when attending the boiler. The description indicates that a gallery was like unto that one often sees about light towers on the coasts. It was the custom of the defendant to make the various parts of the galleries (which were constructed of iron or other metal) in its shop, and to send the parts to the location of the boiler, there to be assembled and attached to the boiler by its own workmen. The plaintiff had been in its employ many years, both in making these parts and in building the galleries. The general construction, followed in this instance, was to attach brackets around the boiler. These iron bars, called "angle irons," were joined together at the further ends of the brackets, thus forming a circular outside rim around the boiler. Loose slats were then laid from the boiler out to flanges on the angle irons, and thus a circular walk was formed around the boiler. The angle irons were laid so as to meet at a bracket, and were joined together at such point by a piece of iron 8 inches long, called a "strap," and by means of rivets. A hole was bored through the angle iron and the bracket, and in it was placed temporarily a bolt. This bolt re-enforced the strap and was the sole means of holding the angle irons fast to the bracket. All this work had been done in construction of a gallery by servants of the defendant, when the plaintiff and two fellow servants were sent to work upon it. It was 25 feet from the ground. The scheme of construction of the gallery also embraced a hand rail, supported by iron stanchions. This was the work designated to these men. In the economy of construction a stanchion not only served to support the hand rail, but it took the permanent place of the temporary bolt, and so was passed through the hole in the angle iron and the bracket, and was secured beneath the bracket by a nut. Thus, like the temporary bolt, it re-enforced the strap, and was the sole means of keeping the angle iron fast to the bracket. The plaintiff and his fellows had set up all of the stanchions save the last. The plaintiff and a companion stood on this gallery to set the stanchion on it and to attach the hand rail. As usual, they took out the temporary bolt, to insert the permanent stanchion, when the floor or slats of the gallery at this point fell to the floor, carrying the plaintiff down, to his injury. The angle irons at this point sprung out, thus withdrawing the support of this slat flooring.

There is little doubt as to the cause of this accident. The natural tendency of the angle irons was to straighten out. As I have said, they

were held in a circular form around the boiler by the straps and by the temporary bolt, and by the latter were fastened to the brackets. When the temporary bolt was taken out, and before the stanchion could be set, the strain came upon the strap alone, and the strap did not hold the angle irons together. There was neither defect nor break in angle iron, bracket, slat, strap, or the rivets in the strap; but the evidence is that the rivets were drawn out of the strap by the inclination of the angle irons to straighten out, and thus the strap failed to keep the angle irons united and curved. The alleged defect in construction was in the manner in which the rivets were driven into the strap. There was evidence that after the rivets were driven through the head of the rivets should have been hammered out into a button, or the rivets should have been countersunk. There is no evidence of any countersinking construction. The first method just stated was said to be the better. Thus the alleged negligence in construction was that of the fellow servants of the plaintiff, who omitted to hammer out the ends of the rivets.

The learned court submitted to the jury, as the principal question of liability pleaded and pressed by the plaintiff, that of a safe and secure place to work. As I think that the question was not presented by the proof, I feel that I am compelled to advise that the judgment secured by the plaintiff cannot stand. I think that this gallery, whereon the plaintiff stood when at work, was not a place to work, because it was the very work itself. It was the construction, and not a temporary means whereby the construction might be made. There can be no dispute over this proposition. The learned trial court was entirely correct when, speaking of this gallery, it said: "It is a part of the structure itself, the boiler itself." And it was not even a completed part, for the hand rail was a part of construction. Without it the gallery at such a height was dangerous, and the stanchions of the hand rail, as I have shown, also served to re-enforce the strap and were essential to hold fast the angle irons to the brackets. The case, then, does not present a servant injured while in a place furnished by the master for work, but while using a part of the work under construction in order to do work in such construction. If he was not in a place furnished for work by the master, inasmuch as the negligence attributed is that in the work of construction, by a servant of the same master, the plaintiff cannot recover under the doctrine of safe place. Cullen, J., in Stourbridge v. Brooklyn City R. R. Co., 9 App. Div. 129, 41 N. Y. Supp. 128, has so clearly and so cogently written upon this question that nothing can be added to his discussion. See, too, Labatt on Master and Servant, vol. 2, § 589. It matters not that the defective riveting was done at another period of time or by other servants. Stourbridge v. Brooklyn City R. R. Co., supra, citing Fuller v. Jewett, 80 N. Y. 46, 36 Am. Rep. 575.

There is no force in the point that the plaintiff was compelled by the physical conditions to take his place upon this gallery in order to do this work. The gallery was not inherently dangerous to one standing or walking thereon, for it was intended to bear men walking or standing thereon, and at the time the plaintiff took his stand upon it the construction had progressed far enough to admit him in safety, if the riveting had been done in the approved manner.

For the reason, then, that the question of safe place was not presented by the proof, I advise that the judgment and order be reversed, and that a new trial be granted; costs to abide the event. All concur.