## O'CONNOR v. PENNSYLVANIA R. CO.

(Supreme Court, Appellate Division, First Department. February 23, 1900.)

1. MASTER AND SERVANT—NEGLIGENCE—FAILURE TO REPAIR DEFECT IN GANG PLANK.

Defendant was not negligent in failing to promptly repair a gang plank over which freight was being carried by its servants from a pier to a vessel moored thereto, where the defect was caused by the metal strip at the end of the plank wearing loose and projecting above the surface of the plank, and was plainly observable, and of such a nature that it could have been readily repaired by plaintiff or his fellow servants

2. SAME—KEEPING EXTRA GANG PLANK AT HAND.

In an action against an employer for negligence in failing to repair a defect in a gang plank over which its servants carried freight from a pier to a vessel, defendant had a right to show that it kept an extra gang plank on the pier, which could have been substituted by plaintiff or his fellow servants for the one which became out of repair.

Appeal from trial term.

Action for personal injuries by Timothy O'Connor against the Pennsylvania Railroad Company. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, McLAUGHLIN, PATTERSON, and O'BRIEN, JJ.

Henry Galbraith Ward, for appellant.
Michael J. Horan, for respondent.

PATTERSON, J. The plaintiff, a longshoreman, was employed by the defendant as a freight handler, and on the afternoon of the 13th of March, 1896, he was directed to move merchandise from a dock at pier 27, North river, in the city of New York, to a boat of the defendant, then moored at such dock. Extending from the dock to the boat was a skid or gang plank about 15 feet long. It is described as looking like a bridge with sides to it and a flapping piece at each end. When in use, one end of the skid would rest upon the dock and the other upon the boat. On the afternoon of the day above mentioned the plaintiff was injured by falling on this skid or gang plank. When he fell he was moving from the dock to the boat, down this skid or gang plank, a case of merchandise weighing about 850

pounds. The case was upon a wheel truck, which the plaintiff was drawing. He claims that while he was coming down this skid or gang plank his foot was caught in a piece of tin or iron, which was raised up at the end of the skid resting upon the boat, and that he was thrown down, and sustained injuries, which subsequently necessitated the amputation of one of his fingers. The piece of metal is commonly called an "apron," and it is described as sheathing or sheeting to prevent the skid from wearing down. The plaintiff sued to recover damages for the injuries thus claimed to have been sustained, and in his complaint alleges that the gang plank or skid was not a good, safe, and secure apparatus and appliance, and that the defendant violated its duty to him in furnishing an unsafe and defective and insecure gang plank, and that from the want of due care and attention of the defendant to its duty in that behalf, and through the insecurity and unsafe and defective condition of the gang plank, the plaintiff was injured. The defendant admitted the employment of the plaintiff, and that he was injured, and also that it was its duty to use ordinary and reasonable care to provide good and safe apparatus and appliance for the plaintiff to use in connection with his work; but it denies that it carelessly, negligently, or unskillfully provided or used an unsafe or defective or insecure gang plank, and denies that the plaintiff was injured through the gang plank being unsafe, defective, or insecure, and it avers that whatever injury happened to the plaintiff was due to his own negligence or that of his fellow servants. The plaintiff had a verdict, from the judgment entered upon which, and from an order denying a motion for a new trial, this appeal is taken.

On the trial the principal dispute related to the condition of the skid, and its being a fit and safe appliance. The defendant's contention is that the skid was in daily use, and that any defect which existed in it at the time of the accident to the plaintiff was only the result of its use on the day on which the accident occurred, and it is argued that there is no violation of an employer's duty to keep a machine or appliance in order where a defect is one arising from the daily use of such appliance, and where the defect may be readily remedied by workmen, and proper and suitable materials are supplied by the master; such defects not being of a permanent character, and requiring the help of skilled mechanics. Cregan v. Marston, 126 N. Y. 572, 27 N. E. 952. All that is claimed here as to the defective condition of the skid is that the sheathing became worn so that the rivets no longer held, and the metal curled or turned up so as to make a slight projection of an inch or an inch and a half. That could have been remedied immediately by hammering the sheathing down, and inserting a few nails or rivets.

The whole effect of the evidence is to show that, by daily use, both the wood and the metal would be liable to be worn down. The plaintiff contends, however, that it cannot be assumed that the defective condition of this skid was produced while it was being used on the day of the accident, because the witness Keating testified that he had seen it in the same condition several days before, and from that testimony the deduction is made that, from the lapse of time

during which this defect existed, notice of its condition was imputable to the defendant. The testimony of Keating is somewhat vague and unsatisfactory as to what the condition of the skid was several days before the accident, but the defect was evidently a very slight and inconsiderable one. That is evident from the fact that Keating did not consider it of sufficient consequence to report it when, as he testifies, he observed it before the accident. The plank was inspected every day by a carpenter named Moore, whose business it was to make daily inspection, and to repair anything out of order. He testified that continual traffic wears the rivets down, and the metal may become separated, and when that is ascertained the rivets are replaced. The neglect to make the very slight repairs required to this skid was that of the plaintiff's fellow servants, but, assuming that there was enough in the evidence on this question of notice to take the case to the jury, there was error committed in the rejection of evidence which calls for a reversal of the judgment.

It is set up in the answer, as a sixth and separate defense, that whatever injury happened to the plaintiff was due to his own negligence or that of his fellow servants. The defendant attempted to prove this defense, as it is related to the negligence of the plaintiff's fellow servants. If the defect in the skid existed before the day on which the accident occurred, it was plainly observable, for Keating, one of the plaintiff's fellow servants, had seen it, and failed to report it. If the defect existed, it was, at the utmost, the duty of the employer either to have it remedied, or to provide another apparatus which was in good condition. The defendant offered to prove that the company kept an extra bridge there on the pier, to be used in case it was needed. Evidence to prove that fact was objected to and excluded. That was a fatal error. Taking the extreme view that the defendant was otherwise liable for injuries attributable to this slightly imperfect condition of the skid, it was entitled to show that it had made ample and adequate provision for the substitution of a perfect bridge in place of one that became out of repair. It certainly was not the duty of the company to put it in place from the dock to the boat. That was the business and duty of its employés who were to use the appliance or apparatus the company furnished them to work with. This plaintiff was not a new hand just employed. He had been working on this dock and with skids, in taking freight from the dock to boats, for some five months, and the defendant should have been allowed to prove those facts, which would establish that the neglect of the plaintiff's fellow servants was the cause of his injury.

The judgment and order appealed from should be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.