KELLY v. HOGAN et al.

(Supreme Court, Appellate Term.   March, 1902.)

1. MASTER AND SERVANT—SAFETY OF APPLIANCES—LOADING VESSEL—BREAK-
ING OF HOISTING ROPE—EVIDENCE.

Plaintiff was a longshoreman employed by defendant stevedores, and
was injured by the breaking of a rope used by defendants to hoist
barrels on board ship.   Great care was taken by defendants in procur-
ing good ropes.   The rope which broke had been tested before it was
put in use, and the load when it broke was small compared to the
ordinary carrying power of such a rope.   The cause of the breaking of
the rope was not known, but it had been used but a short time com-
pared with the time such a rope could ordinarily be used with safety.
*Held* to show freedom from negligence as a matter of law.

2. SAME—FELLOW SERVANTS.

A foreman employed by stevedores to take charge of the loading of a
ship was a fellow servant of a longshoreman whose duty it was to fasten
barrels to a rope to be hoisted from the dock to the deck, so that the
latter could not recover for injuries caused by negligence of the former.

Appeal from city court of New York, general term.

Action by Joseph Kelly against Timothy Hogan and others.   From
a judgment for plaintiff, defendants appeal.   Reversed.

Argued before FREEDMAN, P. J., and GIEGERICH and
GREENBAUM, JJ.

Weeks, Battle & Marshall (H. Snowden Marshall, of counsel), for
appellants.

Louis Steckler, for respondent.

FREEDMAN, P. J.   The plaintiff recovered damages for per-
sonal injuries sustained by him by reason of the breaking of a rope
while engaged in defendants' service.   The recovery proceeded upon
the theory that the defendants, as masters, had negligently permitted
the rope which broke to be and remain in an unsafe condition.   The
rope was used to hoist some barrels from a dock upon a ship, lying
alongside, by the defendants, who were stevedores.   The plaintiff was
employed by them as a longshoreman, and, together with another
man, was engaged in putting slings upon barrels of beef.   His duty
was, after slinging the barrels, to hook them onto a fall, which was
drawn up through a block or pulley reefed onto the mast of the ship.
After he fastened the sling to the rope coming down from the ship to
the dock, the barrels were pulled up onto the ship by a steam engine.
He had worked at this business for 12 or 14 years.   At the time of the
accident he had attached two barrels to the fall, and had seen them go
up.   He and the man with him rolled in two other barrels, and were
just reefing the sling to them when the two barrels he had hooked on
before fell and struck him, and severely injured him.   The two barrels
were lifted about 10 feet up along the skid leading to the ship before
they fell, and were being hoisted at the time they fell.   The breaking
of the rope caused the barrels to fall.   The rope broke about 30 feet
above the hook which he fastened to his sling.   The fall in question
had been rigged up on the night of the accident by a so-called gang-
wayman, named John Stone.   He was one of the longshoremen in

defendants' employ, and it was his duty to watch the fall and report to
the foreman, John T. Norton, when it needed renewing. During the
trial of this case Stone was sick and was not produced, nor was his
testimony procured. The evidence, however, clearly showed that,
whenever a fall looked in any way bad at all, the duty of the gangway-
man was to inform the foreman, and that thereupon a new fall was
immediately procured from a storeroom on the dock in charge of
one John P. Dugan, who was also in defendants' employ, and always
kept a supply of falls on hand. At the trial both parties gave evi-
dence, and the case was submitted to the jury against the objection of
and exception duly taken by the defendants. In order to determine
whether the case was properly allowed to go to the jury, whether they
were correctly instructed, and upon what basis their verdict for the
plaintiff must be deemed to rest, the instructions given to the jury
relating to and bearing upon defendants' liability must be examined
somewhat in detail. In the course of the general charge delivered by
the court, the jury were instructed to the effect that, if it was the duty
of the gangwayman Stone to look after the rope in question, and he
was negligent in the performance of such duty, the defendants were
not liable; but if it was not his duty, but the duty of the foreman,
Norton, the latter was not a co-employé or co-laborer with the plain-
tiff, and the defendants were liable for his negligence, if there was any.
To this was added the following, viz.:

"Gentlemen, if, after looking over this whole case, you determine that
the rope in question was defective and dangerous, and that in its selection
the defendants did not exercise ordinary care and diligence, then, in that
event, if the plaintiff himself was free from contributory negligence, the
plaintiff would be entitled to a verdict."

After the conclusion of the charge the instruction relating to
Norton and the liability of the defendants for his negligence were duly
excepted to, and the court was requested to charge that Norton was
a fellow servant with the plaintiff, and that the plaintiff could not re-
cover for his negligence. This request was refused, and the defend-
ants duly excepted. The court, however, in passing upon defendants'
requests, instructed the jury to the following effect, viz.: (1) That,
where the machinery is not machinery which the defendants them-
selves are fully capable of dealing with, they do perform their full
duty when they go to the best concern in the market, and get the best
things available for the purpose; (2) that the general rule that a
master owes to his servant the duty to keep a rope used by the serv-
ant in order, and that he cannot delegate that duty so as to escape
the responsibility, does not apply to the defects, arising in its daily
use, which are not of a permanent character, and do not require the
help of skilled mechanics to repair, but which are usually remedied
by a workman, and to repair which proper and suitable materials are
supplied; (3) that there was no evidence upon which a finding could be
based that any of the other appliances, the pulleys, drum, or anything
else, were in any way out of order; and that the jury could not find
that the other appliances were other than proper; (4) that any sug-
gestion made by the court that the jury might find that the rope in
question had been injured by passing over some appliances was

withdrawn; (5) that if the jury find that, when the rope was put in operation, reasonable care was used to provide a proper and safe rope, and that if thereafter some hidden or latent defect appeared in the rope, of which the defendants had no notice, then the verdict of the jury must be for the defendants; (6) that if the jury find that the defect in the rope prior to the accident was not discoverable by the exercise of ordinary care, but was a latent or hidden defect, their verdict must be for the defendants; and (7) that if the jury find that the rope was reasonably fit for use when it was rigged, and became defective or weak by too long or too great use, it was the duty of the gangwayman to renew it, and that, if he did not watch the rope and prevent its too great use before being removed, the verdict must be for the defendants.

A careful examination of these instructions, in connection with the evidence in the case, makes it clear that the verdict in favor of the plaintiff must be deemed to have been rendered by the jury upon finding that there was a defect in the rope which was not discoverable by the gangwayman Stone, but which should have been discovered by the foreman, Norton; that the failure of Norton to discover it was negligence; and that for his negligence the defendants are responsible, because he was their representative in that respect, and not a mere fellow servant with the plaintiff. The question then arises whether there is sufficient evidence to support the verdict as rendered upon the assumption, for argument's sake, that Norton was to all intents and purposes the representative of the defendants. Upon the whole case the exact cause of the breaking of the rope remains undisclosed. No discoverable defect has been pointed out. On the contrary, the testimony shows affirmatively that great care was taken by the defendants in procuring good ropes; that they were supplied by the Atlantic Transport Company, which bought from manufacturers of good reputation ropes of the best quality; that the rope had been tested in the ordinary and practicable way by the storehouse keeper before it was sent out for use; that the load on the rope at the time that it broke was small compared to the carrying power of a rope of the dimensions which the rope in question had; that the time during which the rope had been used was very short compared with the time that such a rope is usually used with safety; that no defect had been noticed by any of the men working on the job; and that, if any defect had been noticed, there was at the time an ample supply of ropes of the best quality on hand, which were always furnished immediately if any complaint was made. For these reasons the evidence is utterly insufficient to establish negligence in Norton or the defendants, and at the close of the case the plaintiff's complaint should have been dismissed, or a verdict directed for the defendants.

But, even if it could be held that there was sufficient evidence in other respects to carry the case to the jury, the learned trial judge erred in charging the jury that Norton was in the matter under investigation the representative of the defendants, and in refusing to charge that he was a mere fellow servant with the plaintiff. Upon the facts disclosed in this case he was, as against the plaintiff, a

mere fellow servant, within the rule laid down in Cregan v. Marston, 126 N. Y. 568, 27 N. E. 952, 22 Am. St. Rep. 854; Hart v. Dry Dock Co., 48 N. Y. Super. Ct. 460; Kenny v. Steamship Co., 52 N. Y. Super. Ct. 434. The judgment must be reversed and a new trial ordered, with costs to the appellants to abide the event.

Judgment reversed and new trial ordered, with costs to appellants to abide. event. All concur.