[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 183 
Where one person has sustained an injury from the negligence of another, he must, in general, proceed against him by whose negligence the injury was occasioned. If, however, the negligence which caused the injury was that of a servant, while engaged in his master's business, the person sustaining the injury may disregard the immediate author of the mischief and hold the master responsible for the damages sustained. The master selects the servant, and the servant is subject to his control, and, in respect of the civil remedy, the act of the servant is, in law, regarded as that of the master. But it is not enough, in order to establish a liability of one person for the negligence of another, to show that the person whose negligence caused the injury was at the time acting under an employment by the person who is sought to be charged. It must be shown, in addition, that the employment created the relation of master and servant between them.
If the person who was the immediate cause of the injury was a contractor, engaged in performing a contract to do a specific work as, for example, building a house, the relation of master and servant is not created by the contract between the parties, and for the contractor's negligence, while performing the work, the other party is not liable. (Blake v. Ferris, 1 Seld., 48;Allen v. Haywood, 7 A. E. [N.S.], 974; Laugher v.Pointer, 5 B. C., 547.) Unless the relation of master and servant exists, the law will not impute to one person the negligent act of another. It has sometimes been supposed *Page 185 
that the owner of real property is liable for any injury resulting from negligence, done in the progress of work going on for his benefit on his property, whether the person who was the negligent cause of the injury was his servant or not, and that there is a distinction in respect to the owner's liability, for the act of a contractor, depending on the fact whether the negligence was committed in the management or use of his real or chattel property. But this distinction, if it ever had any support in judicial authority, has been repudiated. (Reedie v.The London and North-western Railway Co.,) 4 Exch., 244;Hobbit v. Same, 4 id., 253; Pack v. The Mayor, etc.,8 N Y, 222; Kelly v. The Mayor, 11 id., 432; Blake v.Ferris, supra.) In Reedie v. London and North-westernRailway Company the plaintiff's intestate was killed by the falling of a stone, through the negligence of workmen engaged in constructing a viaduct on the defendant's railway, across a road upon which the deceased was passing at the time of the accident. The work was being done by contract, and the plaintiff relied upon the distinction adverted to, to take the case out of the ordinary rule, but the court held that the company was not liable. And in Peck v. Mayor, etc., it was held that a city corporation was not liable for injuries to third persons occasioned by the negligence of workmen engaged in grading a street under the direction of a person who had entered into a contract with the corporation to perform the work.
The rule that a person who has entered into a contract for a specific work to be done by another is not liable for the act or conduct of the contractor, has no application in a case where the thing contracted to be done is unlawful, or where a public duty is imposed upon an officer or public body, and the officer or body charged with the duty commits its performance to another. For instance, whoever directs the doing of an act which, when done, will necessarily be the creation of a nuisance, will be personally responsible for a special injury resulting therefrom to third persons, whether the act is performed by a servant or contractor, and a municipal corporation, charged by statute with the duty to keep streets in *Page 186 
repair, cannot escape liability for a negligent performance of this duty, on the ground that the immediate negligence was that of a contractor who had been intrusted with its performance. (Storrs v. The City of Utica, 17 N.Y., 104; Addison on Torts, 197.)
In this case the liability of the defendant for the injury sustained by the plaintiff from the falling of the derrick cannot be maintained upon the ground that it was caused by the negligence of Dillon in omitting to keep the derrick in repair. The relation of master and servant did not exist between Dillon and the defendant. His relation to the company was that of contractor, exercising an independent employment. By his contract with the defendant, made in the spring of 1872, he undertook to unload from barges or vessels and place upon cars all the railroad iron brought to the dock in Albany for the defendant during the season of navigation in that year, for the price of six cents a bar, and the defendant was to furnish a derrick to be used by Dillon in hoisting the iron from the vessels in which it was brought. Dillon, for several years before, had a similar contract with the defendant. He employed laborers to assist him in performing the contract, and, among others, the plaintiff. These persons were employed and paid by him, and were not subject to the control of the defendant. The negligence of Dillon to inspect and repair the derrick, if he was chargeable with negligence for omitting to do so, was not the negligence of the defendant, and it is not responsible therefor. Dillon stood as the employer and master of the plaintiff, and, for his negligence, the plaintiff's remedy is against him alone.
If there was a duty resting upon the defendant to keep the derrick in repair, so that it could be safely used, it may be conceded that the omission of this duty would give a right of action to the plaintiff for an injury caused thereby. In the absence of a contract by the defendant with Dillon to keep the derrick in repair, I am unable to see any ground for inferring a duty on its part to do so. The defendant agreed with Dillon to furnish the derrick to enable him to perform his *Page 187 
contract to unload the iron. It performed its contract in this respect when it furnished a derrick suitable and safe, at the time, for use. That the derrick might from use become out of repair and unsafe was known to the defendant, but this was also known to Dillon, and those employed by him. The owners of an implement or piece of machinery may lawfully allow another to take and use it, and if, in using it, it becomes defective, and causes injury to a third person, is the owner responsible? I think not; especially where the article is not in its nature dangerous, and is placed in the possession of a person competent to manage and use it. This was substantially what was done by the defendant; and the fact that the right to use the derrick was given to Dillon by the contract, and that it was to be used in performing work for the defendant, and on its premises (assuming that the dock belonged to the defendant), does not, I think, change the liability. The plaintiff knew that Dillon had taken the contract for unloading the iron, and the cases which hold it to be the duty of a master to furnish safe and suitable machinery for the use of his servants have no application, because that relation did not exist between the plaintiff and defendant.
In Coughtry, Administrator, v. The Globe Woolen Company
(56 N Y, 124) the defendant caused a scaffold to be erected fifty feet from the ground to accommodate workmen who should be engaged in putting a cornice on the defendant's building, and made a contract with Osborne Martin to put on the cornice, and the scaffold, owing to its defective construction, fell while the plaintiff's intestate, a workman employed by the contractors, was upon it, and he was killed. This court reversed the nonsuit granted at the Circuit. The court say: "The scaffold was upward of fifty feet from the ground, and unless properly constructed would be a most dangerous trap, imperiling the life of any person who might go upon it; that by placing it where they did, on their own premises, for the use of the workmen, they (the defendants) not only licensed, but invited them to go upon it, and impliedly held out to them that it was a safe structure, or at least that proper care had been used in *Page 188 
its erection," and these facts, it was held, imposed a duty upon the defendants toward any person who should be invited to go upon the structure, to use proper care in its construction. (See, also, Corby v. Hill, 4 C.B. [N.S.], 556; Chapman v.Rothwell, El., Bl. El., 168; Hounsell v. Smyth, 7 C.B. [N.S.], 738.)
In this case there was no holding out by the defendant to the plaintiff that the derrick was safe at the time of the accident, and no invitation on its part to the plaintiff to use it. The evidence tended to show that the contract between the defendant and Dillon contained some stipulation in respect to repairs of the derrick by the defendant. It is claimed by the plaintiff that the defendant agreed to keep it in repair, but the defendant's proof tended to show the agreement was that the defendant should make repairs when notified by Dillon that repairs were necessary. The court on the trial ruled substantially two propositions: First. That it was the duty of the defendant, if there was no special agreement as to the inspection and keeping the derrick in order, to provide a suitable and proper derrick, and to keep it in order. Second. That if the agreement was that the defendant was to make repairs when notified by Dillon that repairs were needed, and no notice was given, yet the defendant was liable if this agreement was not known to the plaintiff, and the accident occurred from neglect to repair, and without any negligence on the part of the plaintiff. The defendant excepted to the charge that the defendant was bound in the absence of a contract to do so, to keep the derrick in order, and also to the second proposition stated. Both exceptions were, I think, well taken. No duty, in the absence of a contract to repair, rested upon the defendant for the reasons before given, and if the plaintiff's right of action is founded upon negligence of a duty imposed by the contract between the defendant and Dillon to keep the derrick in repair, that duty did not arise if the contract was conditional until notice that repairs were needed was given. *Page 189 
The judgment should be reversed and a new trial ordered.
All concur except CHURCH, Ch. J., not voting; ALLEN, J., not sitting. FOLGER, J., absent.
Judgment reversed.