AGNES BUTLER, Respondent, *v.* JAMES A. TOWNSEND, Appellant.

The fact that one person is employed by another to do certain work, does not necessarily establish the relation of master and servant between them. That relation exists where the employer selects the workman, may remove or discharge him for misconduct, and order not only what work shall be done, but the mode and manner of performance; it does not exist where the employer lets the work by contract and has no control over the details of performance.

A staging or scaffolding erected for workmen is not a place in which their work is to be done, within the meaning of the rule requiring a master to furnish to his servant a suitably safe place in which to do his work; it is an appliance or instrumentality by means of which the work is to be done.

Where a master places his servant upon a scaffold for the construction of which he had contracted with a skilful and experienced builder, he is not liable to the servant for injury resulting from negligence in its construction, and he is at liberty to accept it without inspection.

In an action to recover damages for alleged negligence causing the death of B., plaintiff's intestate, it appeared that B. at the time of his death was a caulker in plaintiff's employ, engaged in the work of repairing the exterior hull of a vessel, which work requires two classes of workmen known as "lumpers" and "caulkers." It is the duty of the former to erect the staging around the vessel upon which they and the caulkers work. The foreman of the "lump gang" contracted with the defendants to do all the lumpers' work at a price fixed for the whole work which included the erection of the staging, he contracting to put up a good one. Defendants were to furnish and did furnish a sufficient supply of sound and suitable material. One plank had been examined and condemned and marked as unsafe. The lumpers, however, in erecting the staging negligently used this plank which broke when B. was standing upon it, causing his death. *Held*, that the members of the "lump gang" were not defendants' servants; but that, conceding they were, no negligence was shown upon the part of defendants; as in such case the negligence was that of fellow servants of B.

(Argued March 3, 1891; decided March 20, 1891.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made May 12, 1890, which affirmed a judgment in favor of plaintiff entered upon a verdict.

This action was brought to recover damages, for alleged negligence causing the death of John Butler, plaintiff's intestate, who was a ship caulker in the employ of defendants. It appeared that said Butler's death was caused by the breaking of a plank, forming part of the staging erected around the hull of a vessel upon which he was at work.

The further material facts are stated in the opinion.

*Esek Cowen* for appellant. The "lump gang" were independent contractors, for whose negligence defendants were not liable. (*Blake* v. *Ferris*, 5 N. Y. 48; *Gaurdier* v. *Cormack*, 2 E. D. Smith, 254; *King* v. *N. Y. C. R. R. Co.*, 66 N. Y. 181; *Town of Pierrepont* v. *Loveless*, 72 id. 211; *Devlin* v. *Smith*, 89 id. 470; *Quarman* v. *Burnett*, 6 M. & W. 497; *Clare* v. *N. C. Bank*, 8 J. & S. 104; *Burmeister* v. *N. Y. E. R. R. Co.*, 15 id. 264; *Slater* v. *Mersereau*, 64 N. Y. 138.) Assuming that the lump gang were not independent contractors, they were then fellow servants of the plaintiff's intestate, and the plaintiff cannot recover. (*Loughlin* v. *State*, 105 N. Y. 159; *Stringham* v. *Hilton*, 111 id. 188; *Weber* v. *Piper*, 109 id. 496; *Hussey* v. *Coger*, 112 id. 614; *McCormack* v. *Crawford*, 4 N. Y. S. R. 835; *Fraser* v. *R. R. L. Co.*, 47 N. W. Rep. 785.)

*Charles M. Stafford* for respondent. The lumber furnished by defendants for the staging comes within the rule which requires a master to furnish with reasonable care proper and adequate machinery or other appliances for the proposed work, and the duties referred to in the rule are those of the master, and he cannot evade the responsibilities incident thereto by delegation of them to another. (*Bushby* v. *N. Y., L. E. & W. R. R. Co.*, 107 N. Y. 379; 88 id. 225.) If defendants had made but ordinary inspection of the staging or used the slightest care in the selection of the lumber the defect could easily and quickly have been discovered. (*Nichols* v. *B. D. & M. Co.*, 53 Hun, 138; *Ellis' Case*, 95 N. Y. 546; *Probst* v. *Delamater*, 100 id. 273; *Durkin* v. *Sharp*, 88 id. 228.) Defendants cannot escape liability upon the ground

that they used timber belonging to the Provincial Dry Dock Company. (*Gottleib* v. *N. Y., L. E. & W. R. R. Co.*, 100 N. Y. 469; *Jones* v. *R. R. Co.*, 92 id. 628; *Jetter* v. *R. R. Co.*, 2 Abb. Ct. App. Dec. 458.) It was the duty of defendants and their agents to avoid danger by the exercise of proper care, and it is for the jury to determine whether or not the defendants or their agents had been guilty of negligence in constructing such scaffolding. (*Coughtry* v. *G. W. Co.*, 56 N. Y. 128; *Flike* v. *B. & A. R. R. Co.*, 53 id. 553.) It was not only the duty of the defendants to employ careful and trustworthy agents to erect the staging, but also to furnish good and proper material or other appliances necessary for the work, and keep it in good condition. (*Cone* v. *D., L. & W. R. R. Co.*, 81 N. Y. 208; *Kain* v. *Smith*, 89 id. 379.) Kennovan and his gang of "lumpers" were not fellow servants of the deceased. The "lumpers" were agents of the defendants, and their acts are those of the principals, and the question as to whether they were negligent or not was properly left to the jury. (*Coughtry* v. *G. W. Co.*, 56 N. Y. 124; *Goodrich* v. *N. Y. C. & H. R. R. R. Co.*, 116 id. 402.)

FINCH, J. The evidence in this case shows that the process of repairing the exterior hull of a vessel placed in a dry-dock for that purpose requires the skill and labor of at least two classes of workmen, known in the business as "lumpers" and "caulkers." The duty of the former is said to be to erect the staging around the vessel, grave the vessel and put on the felting if necessary and run the metal; and when this work is done that of the caulkers follows. The lumpers consist of eight or more men known as the "lump gang," one of whom acts as their foreman. There were two of these "gangs" in Brooklyn, and one or the other of them was always employed in doing that kind of work. The foreman or "boss" of the lump gang at the scene of the accident was Kennovan. He testifies that he made a contract with the defendants to do the lumper's work upon the vessel, which included the erection of the staging, for four cents a sheet of the metal run on. He

said "it is the understanding with us men that we made a contract with the defendants to do this lumping work you have spoken of. After we had performed that work we entered upon the duties of a caulker." He added that for those duties he was paid caulkers' wages, by the day. His contract as a "lumper" he further described thus: "My contract with Townsend and Edgett was to erect the scaffold and to grave the vessel, put on the felt and run the metal. That included the whole thing, and I received for that four cents for every sheet that went on the ship. That was for the whole gang, as I contracted for the whole gang. That is my usual custom. In this particular case I agreed to put up a good scaffold." Under this agreement, which is in no respect disputed, it is clear that Kennovan and his associates, while performing their contract, were independent of the control of the defendants and not subject to their orders. Kennovan could hire or discharge his men, dictate who should work on the job and who should not, and assign to each his place and specific duties. The defendants could do neither. Their rights were under the contract which they had made, and that committed the whole lumpers' work to Kennovan and his associates, who, while performing their contract, could employ or discharge whom they pleased, and subject to no orders or directions of the defendants.

These lumpers erected the staging. A single plank was defective and broke with the weight of the men upon it, one of whom, not belonging to the lump gang, was fatally injured, and for his death this action has been brought.

I think, upon the evidence given, that the lumpers who erected the staging, while employed by the defendants, were not, in a legal sense, their servants. One may be employed without being a servant, and have an employer who is, nevertheless, not the master. (*King* v. *N. Y. Central & H. R. R. R. Co.*, 66 N. Y. 181.) The relation exists where the employer selects the workman, may remove or discharge him for misconduct, and may order not only what work shall be done, but the mode and manner of performance. (*Blake* v. *Ferris*, 5 N. Y.

48; *Town of Pierrepont* v. *Loveless,* 72 id. 214, 215; Wood on Master & Servant, § 314.) That test, applied to the relation between Kennovan and the defendants, shows that the lumpers were independent contractors and not servants. There were two such gangs, each under a foreman or "boss," who contracted for and controlled their skilled labor. The foreman admitted or excluded men, diminished or increased their number, and assigned them their places and tasks. The defendants could make requests or give advice, but could issue no effective orders as to the mode and manner of doing the work. They owed the separate workmen no separate wages, and no wages as such. Their liability was to Kennovan for a contract price. How much of that was payable to each member of the gang, the defendants could not know or in any manner determine. The ground upon which the trial court held that the lumpers were servants of the defendants appears to have been that the defendants directed their own foreman to "look after the safety of the scaffold." By the contract, Kennovan was to build a good one. That the defendants kept a watch and an oversight over the contractors to see that they properly fulfilled their contract, does not affect, still less change, the actual relation of the parties. (*Slater* v. *Mersereau,* 64 N. Y. 138.)

The case, therefore, is governed by the doctrine of *Devlin* v. *Smith* (89 N. Y. 470), where it was held that one who put his own servants upon a scaffold, for the construction of which he had contracted with a skillful and experienced builder, was not liable for an injury resulting from negligence in its construction; that he was at liberty to accept it without inspection, and was not in fault for putting his own workmen upon lt. Here the staging was erected by skilled and experienced workmen, who always did that work in the dock yard, who contracted to put up a good scaffold, and who were to test it by first using it and exposing their own lives upon it. It was not negligence for the defendants to accept it as perfect and expect their own servants to use it.

It is true that the plank for the staging, under the customary rule, were to be and were furnished by the defendants, but the

·evidence shows that an abundant supply of sound and suitable material was so furnished, and that the particular plank which broke had been examined and condemned and marked as unsafe, and that the sole negligence which occasioned the injury was a careless selection of that plank by the lumpers, for which the defendants were not responsible.

No liability, therefore, was established against them.

But even on the theory adopted by the trial court, that the lumpers were servants of the defendants and not independent contractors, the case was sent to the jury on a wrong principle. The theory adopted was that the defendants owed to the caulkers the duty of providing for them a reasonably safe place in which to do their work; that whoever was chosen by the master to perform that duty became his agent, with whose negligence he was chargeable; that the lumpers were such agents, and that they having been negligent in putting an unsound plank into the staging, the case stood as if the master had done it himself personally, and so became responsible for the consequent injury. It was a mistake to assume as the duty violated that of providing a safe place for the work of the servants. The staging was not, in the sense of the rule, the place in which the work was to be done, but an appliance or instrumentality by means of or through the aid of which the caulkers were to do their work. The distinction is sometimes very important, for a place, in its broad sense, is never safe in which an accident happens, and an accident always happens in some place, and so the master might almost become an insurer. Properly enough, an existing mine, or a railroad track crossing a cattle-guard, or the rooms in a factory, have been deemed "places" for work which the master was bound to make safe by the exercise of reasonable care, but a platform upon which the servant was directed to stand, we have treated, not as a place, but as an instrument or appliance of his work (*Benzing* v. *Steinway*, 101 N. Y. 54), and so of an elevator upon which the servant rode in the performance of his labor. (*Stringham* v. *Hilton*, 111 N. Y. 188.) In one sense the place of an engineer's work is on his locomotive, but a defect in that is a

defect in the machine which the master has supplied, and not in the place of labor which he has furnished. The staging in the present case was as much an appliance or instrumentality as if it had been a ladder, on some round of which the workman was required to stand in order to do his work, and we shall, at least, avoid possible confusion if we confine our attention to the exact duty which the master violated, if he violated any.

Assuming then that the lumpers were servants of the defendants, acting under the direction and orders of their foreman, they were also the fellow servants of the caulkers. Both were working at the same time under a common master, upon the same vessel and engaged in the same general employment. That to some extent their trades were different and one might not be skilled in the work of the other is immaterial where all were working on the hull of the vessel, for one general purpose, to accomplish one common result, and under one common control. (*Svenson* v. *Atlantic M. St. Co.*, 57 N. Y. 108.) Their labor was more closely and clearly related to the general purpose than that of a car repairer, a head brakeman and a yard master who were held in a given instance to have been fellow servants. (*Besel* v. *N. Y. Central & H. R. R. R. Co.*, 70 N. Y. 171.) Now, the evidence in this case demonstrates that as between the master and his servants, it was the duty of the servants and not of the master to erect the staging. That was the uniform rule and unbroken custom which everybody understood and upon which everybody acted. It was a detail of the servants' work, and a duty of the operatives which they and not the master were bound to perform. The duty of the latter was to furnish the horses and the plank, and of the former to construct the staging for their own convenience and use. It was as much a part of their work as to put on the sheets of metal which the master supplied. Indeed the learned trial judge admitted all this when he charged the jury that the defendants were not bound to personally inspect and select the planks which were used. Of course, the master was not liable to the servant for an injury due to the neglect of fellow servants.

But the trial court held that the decedent and the lumpers were not fellow servants, and apparently upon the theory that the special and peculiar work of the lumpers was done before the work of the decedent commenced, and so the parties were not fellow servants when the negligent act of selection occurred. That is not at all established by the evidence, but is immaterial, even if it be true; for the accident happened while the parties were fellow servants, and through the negligence of one who was a fellow servant, and not through any negligence of the master. It was the presence and the negligent use of the defective plank in the staging from which the injury came, and that was chargeable to the servants, who not only put it there, but left it there for the common use of all. A detail of the servant's work cannot be transformed into a master's duty by reference to the dates of employment. The new servant takes the risk of any existing negligence of his fellow servants as well as that which may thereafter occur. It may possibly be that if the lumpers had been discharged and ceased to be servants at all, and the defendants hiring others, had furnished the erected and completed staging for their use, that a different question would have arisen, perhaps involving some new duty of the master; but nothing of that kind occurred. Caulkers and lumpers at the time of the accident were working together upon the same vessel, for the same general purpose, and under the common master, when the negligence became operative which caused the injury. Tracing it back to an earlier origin is of no consequence, unless thereby some new duty of the master has been brought into existence.

The trial court, therefore, erred in the theory upon which the case was sent to the jury, even if the lumpers were not independent contractors. The duty violated, if any, related not to the place of work, but to an appliance or instrumentality used; the lumpers and caulkers were fellow servants, and the negligence of the former existing and continuing when the decedent was employed was that of his fellow servants, even though in some sense it had an earlier origin. The exceptions taken, cover the errors suggested and bring out clearly the fact

that no question of personal negligence on the part of the master was submitted to the jury, but only one of imputed negligence for which he was declared responsible.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur, except RUGER, Ch. J., ANDREWS and O'BRIEN, JJ., dissenting.

Judgment reversed.