(94 App. Div. 149.)

CONLEY v. LACKAWANNA IRON & STEEL CO.

(Supreme Court, Appellate Division, Fourth Department. May 10, 1904.)

1. SERVANT'S INJURIES—STATUTES — INSUFFICIENCY — SCAFFOLDING—APPLICATION OF STATUTE.

The labor law (Laws 1897, p. 467, c. 415, § 18) provides that a person employing or directing another to perform labor of any kind, in the erection, repairing, or alteration of a house, building, or structure, shall not furnish or erect for the performance of such labor any scaffolding which is unsafe or improper. An upright boiler stood outside of a building, entirely unprotected and unsheltered, and was connected with a boiler inside of the building by a pipe; the boiler on the outside having been

used temporarily for washing out the boiler inside the building. It became expedient to disconnect and remove the outside boiler, and some planks were placed on cleats and horses in such a position that plaintiff could reach the pipe which entered the building, and, while plaintiff was standing on the planks, one of them tipped up with him, whereby he sustained injuries. *Held*, that the platform was not a scaffolding, within the statute.

Spring, J., dissenting.

Appeal from Trial Term.

Action by John J. Conley against the Lackawanna Iron & Steel Company. From a judgment in favor of defendant, plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Hamilton Ward, Jr., for appellant.
L. L. Babcock, for respondent.

STOVER, J. Plaintiff was in the employ of defendant, and at the time of the accident was engaged in disconnecting steam pipes connecting boilers upon the premises of the defendant. Defendant at the time was engaged in installing a plant for the general purposes of its business. Inside of the building, which had been erected as a permanent structure, was a large boiler, intended for use in the operation of the plant. Outside of the building there had been placed, some few days before the accident, an upright boiler, which stood upon its own iron base, which rested upon the ground. This upright or smaller boiler stood in an angle formed by the main building and a temporary building which had been constructed by the defendant, but the boiler was entirely unprotected, having no roof or shelter of any kind over it, and being connected to the boiler inside of the main building by a pipe which ran through the wall of the building; and, otherwise than that, there was no connection whatever to the building or other portions of the structure belonging to the plant. It would appear from the evidence that this upright boiler had been used for a few days for "washing out" the large boiler inside the mill, and that it had been determined to move the upright boiler down into a swamp in the vicinity of the building, in order to pump water from the ditches which were at that time giving them some trouble. In order to remove the boiler, it was necessary to disconnect the pipe which ran from the upright boiler to the large boiler. The fittings were several feet above the ground, and, in order to reach them conveniently, cleats were nailed upon the building, the ends of planks placed upon the cleats, and, at a distance of about 12 feet from the building, horses were placed, which were of the same height as the cleats; and the planks near the other end rested upon the horses, the ends projecting some distance beyond the horses. Plaintiff went upon this platform so constructed, and, after disconnecting the flange which formed the union of the two pipes, stepped upon the end of the planks which projected over the horse. The planks tipped with the weight of the plaintiff upon the end, and he was thrown to the ground, sustaining the injuries which are made the basis of this action. The injury was caused solely by the tipping of the planks be-

cause of the plaintiff placing his weight at a point too far from the support of the horses.

The question presented is a narrow one, and involves the construction of section 18 of the labor law (Laws 1897; p. 467, c. 415), which is as follows:

> "A person employing or directing another to perform labor of any kind in the erection, repairing, altering or painting of a house, building or structure, shall not furnish or erect, or cause to be furnished or erected, for the performance of such labor, scaffolding, hoists, stays, ladders or other mechanical contrivances which are unsafe, unsuitable or improper and which are not so constructed, placed and operated as to give proper protection to the life and limb of a person so employed or engaged."

It is conceded by the defendant that, if this was a scaffold such as described in the statute, a question was raised for the jury; but, if it was not, then it is claimed the rule laid down in Butler v. Townsend, 126 N. Y. 105, 26 N. E. 1017, applies, and that the negligence, if any, was that of fellow servants, for which the defendant was not liable.

It was not the intention of the statute to render all persons using scaffolding for any purpose liable under its provisions, but its operation is limited to scaffolds which are used in the erection, repairing, altering, or painting of a house, building, or structure. Now, the people engaged in the erection, altering, and repairing of houses are house builders; carpenters; men whose occupation generally compels them to use scaffolding in the performance of this kind of work. It is the erection, repairing, or altering of a house. This would cover generally all kinds of work done by the artisans engaged in house building or repairing. We do not discuss the other class of people—painters—because evidently that can have no bearing upon the question under discussion, except to permit the argument that it was not intended that persons who may be incidentally employed about a building should be embraced within the provisions of the law. A "structure" is defined to be "a building of any kind, but chiefly a building of some size and magnificence; an edifice." As to the boiler itself, it cannot be claimed that it was a building or a house, and the question as to whether it was in any way connected with the building will be discussed further on.

It perhaps is not necessary to argue at any great length that a boiler is not a structure, within the meaning of the statute. While the word "structure" may cover a great variety of form and construction, yet, when used in connection with the words "house" and "building," it is evidently intended to simply describe a variety of building; and it would seem that it could not by any possibility be interpreted to mean a boiler which is portable, and may be readily moved from place to place as convenience in its use may require. Such a boiler rather becomes an appliance in the business for which it is used, and, on account of its portable character, can hardly be said to become so attached to premises as to constitute a part of the building or structure meant by the statute, and the recognized character of which is its permanency and immobility. But it is said that, inasmuch as the boiler was in use in connection with the plant, it therefore became in such use a part of the building—a quasi fixture—and that therefore its removal was an alteration of the building, and the scaffolding used in its removal would

be a statutory scaffold. The case of Wingert v. Krakauer, 76 App. Div. 34, 78 N. Y. Supp. 664, is cited as authority for this proposition, but an examination of that case will show a material distinction. In that case the defendants were piano manufacturers, and at the time of the accident were engaged in removing their factory from one building to another some distance away. In order to do that, it was necessary to change the character of the building which they were about to occupy, and in doing so they placed hangers and shafting, and in fact altered the entire building from a plain building or loft to a manufacturing establishment; and it was held that there was such an alteration of the building as brought it within the provisions of the statute. But in the case under consideration there is no alteration of the building or structure in any way. It is simply the removal of an appliance which had been put upon the ground, apparently temporarily, without in any way interfering with the structure itself, or in any way changing or altering its condition. The building was complete and in proper condition for operation for the purposes for which it was intended after the upright boiler had been removed. Its character was not changed in any particular. The alteration, if any, was that of the outside boiler itself, but, as stated above, this was not within the statute. The location of the boiler being of a temporary character, its connection was made accordingly, and, of necessity, its removal would require some labor in disconnecting it from the outside pipe. Yet this was neither an alteration of the boiler nor of the building. It was simply a detail in the use of the appliance for the purpose for which it was intended. We think the better view is that the boiler was in no sense a portion of the building, but that it was an appliance in use upon the premises at such times and places as conveniences might require, and that its removal from point to point had not the character either of erection, repairing, or altering of a building or structure, within the statute, and that the scaffolding which was used for the purpose of disconnecting the boiler was not a statutory scaffolding.

The evidence shows that competent men had charge of the construction, and that sufficient material was furnished by the master, and it is not strongly contended that there was negligence on the part of the master in this regard. We think the evidence shows that the master had provided competent foremen and workmen and sufficient material for the construction of the platform, and that its construction was such a detail of the general management of the business as might properly be left to the judgment and discretion of a foreman or other employés in charge, and that the negligence, if any, in the construction of the platform, was that of a fellow servant, for which the master was not liable.

A further question in the case, as to the assumption of risk, has been discussed. It is quite evident that the construction of the platform was open and apparent to any one, and, laid as these planks were, the position of the horses, and the liability of the planks to tip, must have been open and apparent to any one who occupied the platform; and much force is to be given to the contention that the plaintiff assumed the risk of the employment. We think that the platform was not a scaffold, within the meaning of the statute, and that under the ruling

laid down in Butler v. Townsend, supra, the plaintiff is not entitled to recover.

Plaintiff's exceptions overruled. Motion for a new trial denied. Judgment in favor of defendant directed upon the verdict, with costs to the defendant.

McLENNAN, P. J., and WILLIAMS, J., concur. HISCOCK, J., concurs in result. SPRING, J., dissents.