## BLUMQUIST v. SNARE & TRIEST CO.

(Supreme Court, Appellate Division, Second Department. December 3, 1909.)

1. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—JURY QUESTIONS—
   NEGLIGENCE.
   In an action for intestate's death while employed by defendant on a pile driver which capsized while it was being towed down the river, whether defendant was negligent in assigning decedent to duty on the pile driver *held* for the jury.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1027, 1041; Dec. Dig. § 286.*]

2. WITNESSES (§ 269*)—EXAMINATION—CROSS-EXAMINATION.
   Where the only question propounded to a witness in chief was whether defendant hired from witness a pile driver on which plaintiff's intestate was working when drowned, a question as to the seaworthiness of the pile driver was not proper cross-examination.
   [Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 949–954; Dec. Dig. § 269.*]

3. MASTER AND SERVANT (§§ 101, 102*)—SAFE PLACE OF WORK—MASTER'S DUTY.
   An employer is bound to furnish a servant a reasonably safe place to work, considering the nature of the employment.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 179; Dec. Dig. §§ 101, 102.*]

4. MASTER AND SERVANT (§ 190*)—NEGLIGENCE OF CO-EMPLOYÉS—DISCHARGE
   OF MASTER'S DUTY.
   If the act of one in charge of the work in directing a servant to go aboard a pile driver pertained to the duty of the employer to furnish a safe place of work and was negligent, the employer is responsible therefor.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 469; Dec. Dig. § 190.*]

5. MASTER AND SERVANT (§ 289*) — INJURIES TO SERVANT — JURY QUESTION —
   CONTRIBUTORY NEGLIGENCE.
   In an action for intestate's death by the capsizing of a pile driver on which he was working while it was being towed down the river, whether intestate was guilty of contributory negligence *held* for the jury.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1089; Dec. Dig. § 289.*]

Appeal from Trial Term, Queens County.

Action by Ida Blumquist, as administratrix of Carl J. Blumquist, deceased, against the Snare & Triest Company. From a judgment dismissing the complaint and an order setting aside a verdict for plaintiff, she appeals. Reversed, and verdict reinstated.

Argued before WOODWARD, JENKS, BURR, and MILLER, JJ.

Martin T. Manton, for appellant.
Hector M. Hitchings (Lynn W. Thompson, on the brief), for respondent.

WOODWARD, J. The plaintiff appeals from a judgment dismissing the complaint and from an order setting aside a verdict for $5,000 in an action by the widow and administratrix of Carl J. Blumquist

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to recover damages for the death of her husband by reason of the defendant's negligence. The deceased was employed by the defendant, and by the defendant's direction was on board a pile driver chartered by the defendant, and in tow of a towboat hired for that purpose by the defendant. The pile driver, with the deceased aboard, had been towed down the East river from Flushing to a point under the Brooklyn Bridge where it capsized, and the plaintiff's intestate was drowned.

The charges of negligence were (1) the unseaworthiness of the pile driver; and (2) the carrying of the hammer, weighing about 2,000 pounds, high up on the ways of the pile driver, instead of on the deck, thereby making the craft topheavy, and easily overturned.

The towboat was hired by the defendant for the purpose of this towing from the Hudson Towboat Company, a responsible corporation engaged in that business; and, in view of the disposition we have determined to make of this appeal, it is not necessary to decide whether such company was an independent contractor in full control of the details of the work so as to relieve the defendant from liability for negligence in relation to the position of the hammer, under the rule of Butler v. Townsend, 126 N. Y. 105, 26 N. E. 1017, and Berg v. Parsons, 156 N. Y. 109, 50 N. E. 957, 41 L. R. A. 391, 66 Am. St. Rep. 542. The trial court dismissed the complaint on the theory that the plaintiff had not made out a prima facie case as a matter of law. We are unable to concur in this view, but are of the opinion that the jury should have determined the question of the defendant's negligence; and that there was sufficient evidence to sustain the finding in favor of the plaintiff.

One of the plaintiff's witnesses, Swenson, the owner of the pile driver, called and examined by the plaintiff only as to the hiring, testified on cross-examination that it was seaworthy at the time he chartered it to the defendant, about 10 days before it capsized. His testimony may have been weakened in the minds of the jury by the fact that he was the owner, and by the further fact that he had previously been libelant in an action in the United States District Court, wherein he recovered damages from this defendant for the loss of the same pile driver through the defendant's negligence on the occasion when the controversy in this action arose, and had there testified that his pile driver was seaworthy.

However this may be, the evidence of the plaintiff's witness Johnson, foreman of the defendant company, who inspected the pile driver for the defendant at the time of the hiring, or shortly before, was that the hold was in bad condition, and that he so reported to the defendant:

"The wood was soft. It was that soft you could take it in your hands and squeeze it together like a lump of dirt; that is, the timbers. She had big seams in; she being caulked and then smothered with a coat of paint. By big seams I mean seams that oakum would not stay into. You couldn't caulk it, because the plank is rotten inside and oakum wouldn't stay in the seams; got it right through; never make it water tight. There were about three-quarters of an inch seams. There is about three seams above the water line on them boats. They are about two foot six above the water. I reported the result of my examination to Mr. Hayward. I told him that she was entirely no good for buying. I told of her condition. I told him that her seams were wide

and filled with oakum. I told Mr. Hayward I could crumble up her timbers in my hand like dirt."

Another witness for the plaintiff, one Nord, who worked on the pile driver for the defendant while it was at Flushing just before the capsizing, testified as to its condition:

"I was working on her every day as long as she was there, and she was leaking badly, and I got a caulking iron, and I put the iron clean through her planking through her side. Those seams were three-quarters of an inch; about three-quarters—seven-eighths wide. They were filled with oakum and a little paint outside of it. I put my caulking iron through the port side. When she is in tow, the stern of the boat becomes the head, because of the slant. The ways are on the aft end of the boat and are heavy. Q. How many times did you caulk her during that 10 days? A. I think I was trying twice. I pumped her three or four times a day, during that 10 days. * * * The foreman told me to go there and caulk her. His name is Harry Johnson. Not the man who was last on the witness stand. That is another man. He told me to look her over to see if I could find any place she was leaking through. I did, I caulked her where I though the place was. I reported that she was too far gone. I couldn't caulk her except to fill the inside all over; too rotten. As soon as I get oakum in a little ways, it went clean through. She was rotten on the inside."

The evidence of these witnesses presented a question of fact for the jury as to the defendant's negligence in assigning the deceased to duty on the pile driver. There were peculiar circumstances surrounding the testimony of the witness Swenson, and it was for the jury to say how far they affected his credibility. He was sworn for the plaintiff only to prove the hiring from him of the pile driver, and his testimony as to the seaworthiness of the pile driver was not proper cross-examination. He became the defendant's witness to that extent. The jury saw fit to reject that part of his testimony, and to accept that of Johnson and Nord.

One Cassidy was in charge of the bridge the defendant company was building at Flushing, and there is evidence that he ordered the plaintiff's intestate on board of the pile driver as it was about to start for New York on the night it capsized. It was the duty of the defendant to furnish him a reasonably safe place to work, considering the nature of his employment. Cullen v. Norton, 126 N. Y. 1, 26 N. E. 905. If the act of Cassidy in directing Blumquist to go aboard the pile driver was one pertaining to the duty of the defendant in this respect, the defendant is responsible. If Cassidy was negligent, this negligence is chargeable to the defendant (Crispin v. Babbitt, 81 N. Y. 516, 521, 37 Am. Rep. 521), and these were facts for the jury to determine.

There is no evidence that the condition of the hold of the pile driver was brought to the attention of the deceased. There is evidence that he was not experienced in this line of work, and that this was known to the defendant's foreman, Johnson. He was alone on the pile driver on the trip down the river and at the time of the capsizing. There is no direct evidence of contributory negligence on his part. So far as appears, he might have used the pumps with reasonable diligence, and otherwise safeguarded himself, and under the evidence the jury might properly have drawn this inference. All these facts and circumstances were for the consideration of the jury, and it was for the jury to draw

inferences from them in respect to Blumquist's negligence as a contributing cause of his death.

The judgment and order should be reversed, and the verdict of the jury reinstated, with costs. All concur.