(158 App. Div. 778.)

SMIDT v. BUFFALO COLD STORAGE CO.

(Supreme Court, Appellate Division, Fourth Department. November 12, 1913.)

1. MASTER AND SERVANT (§ 117*)—LIABILITY FOR INJURIES—UNSAFE PLACE TO WORK.

Where a competent and trustworthy employé, whose principal duty had been to operate an elevator, was placed at the elevator with full and explicit instructions to see that it was not operated into the basement while other employés were working in the elevator shaft, the employer performed its full duty to the employés in the shaft without blocking the elevator, disconnecting the current by a switching device which was never used except in case of accident and in using which grave danger would be encountered, or removing the car itself from the shaft, and hence it was not liable where such employé left his post and during his absence another employé, ignorant that any one was in the shaft, lowered the elevator, injuring an employé working in the shaft.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 177, 208; Dec. Dig. § 117.*]

2. MASTER AND SERVANT (§§ 101, 102*)—LIABILITY FOR INJURIES—UNSAFE PLACE TO WORK.

It is not a master's duty to furnish employés an absolutely safe place to work; it being called upon only to use reasonable care and prudence in supplying such a place.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171, 174, 178–184, 192; Dec. Dig. §§ 101, 102.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. MASTER AND SERVANT (§§ 101, 102*)—ACTIONS FOR INJURIES—QUESTIONS FOR JURY.

    Where an elevator in a warehouse was complete and had been in operation for months, the fact that the warehouse was in some respects incomplete and that employés working in the elevator shaft were placing a door on the shaft did not authorize the jury to find that the circumstances were extraordinary so as to impose on the employer the duty of exercising greater care than under ordinary circumstances.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171, 174, 178–184, 192; Dec. Dig. §§ 101, 102.*]

    Kruse, P. J., dissenting.

Appeal from Trial Term, Erie County.

Action by John Smidt against the Buffalo Cold Storage Company. From a judgment for plaintiff, defendant appeals. Reversed, and new trial ordered.

See, also, 151 App. Div. 901, 135 N. Y. Supp. 1143.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

Kimball & Stowe, of Buffalo (Franklin D. L. Stowe, of Buffalo, of counsel), for appellant.

Aaron Fybush, of Buffalo (Frank C. Ferguson, of Buffalo, of counsel), for respondent.

MERRELL, J. This action is brought by the plaintiff to recover of the defendant damages which he claims to have sustained by reason of defendant's negligence. The action has twice been tried; the first trial resulting in a verdict in favor of plaintiff of the sum of $6,500. Judgment thereon was reversed on appeal to this court and a new trial ordered. Upon the second trial a verdict was rendered in favor of the plaintiff and against defendant for the sum of $10,000. This appeal is from the judgment entered upon said last-mentioned verdict. On the last trial the case was submitted to the jury as a common-law action and not under the Employers' Liability Act. The facts briefly are as follows:

[1] On July 8, 1910, the plaintiff, an employé of defendant at its cold storage plant in Buffalo, was working in an elevator shaft in one of defendant's warehouses. The particular warehouse in which plaintiff was employed was of comparatively recent construction, having been built about two years. The elevator in question had been in use only about three months. On the day in question, plaintiff, with several fellow workmen, was engaged in installing a door leading from the basement into the elevator shaft. The door was heavy, being of refrigerator construction, and required the services of a number of men. The principal part of the work of setting up this door was accomplished during the forenoon, and at the time the plaintiff and his fellow workmen left for their luncheon at noon practically all that remained for them to do was to lift the door, which had been attached by its hinges to the frame, and place the whole structure in an upright position in the opening between the basement and the elevator shaft. To insure the safety of those employed in the shaft, including plaintiff,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

one Sanders, who seems to have been in charge of the work, placed an employé, Bernhardt, on the first floor at the elevator, with full and explicit instructions to see to it that the elevator was not operated down into the basement by any one while the work was in progress and the men in the shaft. Bernhardt was a competent and trustworthy employé of a year's connection with the concern. It had been his principal duty to operate the elevator between the different floors of the establishment for carrying freight and packages. The instructions given him were repeated several times and were heard and understood by the plaintiff, the plaintiff testifying that he heard Sanders tell Bernhardt, the elevator man, not to let any one run the elevator down; that, while he was not familiar with much of the English language, he understood that; and that he heard Bernhardt reply, "All right." Plaintiff also testified that he heard Sanders tell the elevator man this before dinner and once after; that he heard him tell him twice; that he heard Sanders say to Bernhardt, "Don't let any one run the elevator down." Sanders testified upon the trial of his repetition several times to Bernhardt of such explicit instructions.

Upon the return of the plaintiff and his fellow workmen after luncheon on the day he was injured, he, with two others, first went inside the elevator shaft and the door was placed upright in the opening. Sanders and another coemployé of plaintiff, who had been with him inside the elevator shaft, then by means of a ladder climbed out upon the first floor, leaving plaintiff inside the shaft to wedge up the structure while they went outside and fastened it securely. Sanders testified that, as he came up out of the shaft preparatory to descending into the basement on the outside, he saw Bernhardt, and that he was standing right by the shaft and had been looking down; that he said to him that there was still a man down in the shaft, and that he must be very careful and let no one run the elevator down, because plaintiff had no way to get out, because they were going to put the door in the opening; that Bernhardt replied, "All right, I will watch it;" that Sanders then left him right there by the elevator shaft right by the door and descended into the basement. For some unexplained reason Bernhardt does not seem to have been faithful to his trust and upon some pretext left his post of duty and during his absence another employé ignorant of plaintiff's position, entered the elevator and descended with it upon plaintiff, causing him serious injury.

The elevator was operated by means of electricity, and by a cable it was within the power of Bernhardt, as he stood at his post where Sanders left him, to immediately stop the elevator, if any attempt was made to move it.

It is claimed on the part of plaintiff that defendant did not discharge its full duty to plaintiff in the premises, and that either the power should have been turned off or some mechanical means provided to block the elevator while the plaintiff was in the dangerous position at the bottom of the shaft. I am unable to adopt this view or to understand how the defendant can justly be held liable for plaintiff's unfortunate accident. It seems to me that the defendant, when it placed Bernhardt, concededly an intelligent and competent man, in charge of

the elevator, with explicit directions repeatedly given him not to permit the elevator to be lowered, he then understanding fully the operation of the car and being in a position to control it at all times, discharged its full duty toward the plaintiff. No question is raised as to Bernhardt's competency or qualifications for the work. He had always proven reliable and he was thoroughly familiar with the operation of the car. Had he attended to his duty and obeyed his instructions, plaintiff would not have been injured. It seems to me that the precaution that the defendant took was that which a reasonably prudent person would naturally take. All that the defendant was called upon to do was to exercise reasonable care for the protection of its employés. It is very easy to look back, now that Bernhardt disobeyed his instructions, and say how plaintiff might have been protected. It probably was within the power of the defendant to build a falsework within the shaft or otherwise block the car so that it would be impossible to lower it. Indeed, it might have removed the car itself from the shaft, but it would not be required in the exercise of ordinary care to do that. Plaintiff's injury was the direct result of the carelessness of a competent fellow servant, and it seems to me that plaintiff, knowing fully of the nature of the precautions taken by defendant for his safety, clearly understanding that the operation of the car was to be stopped by the placing of Bernhardt on watch, engaging in the work that he did, assumed the risk of his employment.

Plaintiff's suggestion that prudence would have led defendant to disconnect the current by the switching device in the pent house at the top of the elevator shaft, and so stop the operation of the car during the prosecution of the work in the shaft, is hardly reasonable. The device mentioned was an automatic contrivance whereby, in case of accident, automatically the car was stopped. According to the testimony, it never was used for the purpose suggested, and it would appear that in attempting to switch off the curent in that manner grave danger would be encountered.

[2] As before stated, it seems to me that the master in this case discharged its whole duty to the plaintiff by placing Bernhardt on watch. It is not the master's duty to furnish its employés with an absolutely safe place to work. He is only called upon to use reasonable care and prudence in supplying such a place. Harley v. B. C. M. Co., 142 N. Y. 34, 36 N. E. 813. To place upon the master a greater duty would be to compel him to insure the safety of his employés. Butler v. Townsend, 126 N. Y. 105, 26 N. E. 1017; Sheridan v. Interborough Co., 101 App. Div. 535, 91 N. Y. Supp. 1052; Wootten v. Flatbush Gas Co., 102 App. Div. 294, 92 N. Y. Supp. 380.

[3] In submitting the case at bar to the jury, the court used this language:

"Under ordinary circumstances the master has performed his duty when he has furnished proper equipment, proper men to operate it, and proper safeguards against accident in the ordinary operation of machinery, but it is urged here that the circumstances were extraordinary."

It would appear that it was upon the theory that the circumstances here were extraordinary that led the court to submit the case to the

144 N.Y.S.—30

jury. It does not seem to me that the fact that the warehouse was in some respects incomplete, particularly that the door in question was being erected, is sufficient to authorize the jury to find that the circumstances concerning this accident were extraordinary.

The position in which plaintiff was placed differed in no degree in the danger to him than as though he had been called into the elevator shaft on other duties than construction work. So far as the car was concerned, it was complete and it had been in operation for some months. While plaintiff was engaged in installing the door in question, he was in no more danger than as though he had entered the shaft to clean it or upon some other errand. He would have been in a like dangerous position in either case, and his danger was in no wise increased because of the fact that he was engaged in new construction.

It seems to me the case at bar is in principle like the recent decision of Kennedy v. Wanamaker, 145 App. Div. 428, 129 N. Y. Supp. 1053, affirmed without opinion 207 N. Y. 724, 101 N. E. 1107. In that case the employé was sent into the elevator shaft for the purpose of cleaning it. The man charged with the duty of operating the car was told by the employé before he entered the shaft that he was about to do so for the purpose of cleaning it in the basement; and directed such operator to post the usual notices, "Elevator not running," and the elevator was brought to a stop at the first floor as it was the duty of the operator, according to custom, to hold it until notified by the man in the shaft that his work below had been completed. The operator disregarded this instruction, shot his elevator to the sixth floor, causing the counterweights to descend and injure the man in the shaft. The court held in that case that the provisions for the operative's safety were sufficient, and that he assumed the risk of the negligence of the operator; that he was as fully acquainted with the manner in which the work was done and knew the danger quite as well as his employer. The testimony shows in the case at bar that Smidt clearly understood the method which had been adopted for his protection.

The Wanamaker Case, it seems to me, is directly in point, and the court there held that the negligence which caused the injury was that of a competent coemployé, and that such negligence on his part was assumed by the plaintiff. I think the same applies to the case at bar, and am therefore of the opinion that under well-settled law the plaintiff cannot recover, and that the judgment and order of the court below should be reversed, and a new trial ordered, with costs to appellant to abide event. All concur, except KRUSE, P. J., who dissents.

KRUSE, P. J. (dissenting). The plaintiff has succeeded twice before a jury and in each instance the trial judge has permitted the verdict to stand. Upon the first appeal to this court it was held that prejudicial error had been committed in admitting testimony, not that the defendant had as a matter of law fully performed its duty to the plaintiff, as seems to be held in the prevailing opinion. The question relating to evidence is not now in the case. The other question was in the case upon the first appeal and is here now. It is now proposed to hold that there is no liability at all. I cannot take that view of the case.

The plaintiff was set at work to help the carpenter in the work of putting doors in the elevator shaft at the bottom of the shaft. It was not the work of a moment. The two men had worked a good part of the forenoon and were continuing their work in the afternoon, when the accident occurred. The foreman knew that the men were required to work in the shaft, and that they would be in danger if the elevator came down. He also knew that if the elevator met with an obstruction in its downward course it would stop and automatically turn off the power so that it could not be moved up or down until the power was again made effective. That was just what happened upon this occasion, when the elevator came down upon the plaintiff. When the progress of the elevator was sufficiently arrested by coming in contact with the plaintiff to turn off the power, it stopped, holding him and crushing him until the power was again applied. From what the foreman told Bernhardt, who is called the elevator man, the inference is sought to be drawn that the elevator was not to be moved at all while the work below was in progress, and that Bernhardt was expected to stay there all the time and do nothing else but to see that the elevator was not moved. That was not what the foreman told Bernhardt, and I think the inference is quite to the contrary. If it was intended that the elevator should not be operated from the time the men commenced work until they had completed their job, it hardly seems reasonable that a man would be stationed at the elevator whose only duty was to watch it and prevent its being moved, when that could be accomplished by simply turning off the power. It would have taken but a few moments to have turned off the power, and then, as the foreman himself testifies, the elevator could not have been operated and would have been entirely safe. That, I think, the jury was warranted in finding should have been done in the exercise of reasonable prudence and with due regard for the safety of the men below, and for any neglect of duty in that regard the defendant is liable, since it was the duty of the defendant to adopt a method reasonably adequate to prevent the elevator from being operated and injuring the plaintiff while he was engaged in this perilous work. That duty the defendant could not delegate to either the foreman or Bernhardt or any other subordinate and escape liability for want of care in that regard. I assume that was what the learned trial judge had in mind in charging the jury that in operating the elevator Bernhardt was not an employé but performing the duty of a master. Perhaps that statement was too broad, but the grounds of liability as finally stated leaves the defendant, I think, without cause for complaint.

Defendant's counsel also requested the court to charge that, if the accident was caused by the negligence of Bernhardt in failing to carry out his instructions and those instructions were adequate, then the accident was caused by the negligence of a fellow servant and the plaintiff could not recover. While that request was refused, I think the error, if any, was cured by subsequently leaving the question to the jury as to whether the means adopted to prevent the accident and protect the plaintiff working in the shaft were reasonably adequate.

I therefore reach the conclusion that the judgment and order should be affirmed.